**In the Interest of M.D.S., A Child,**

**M.D.S., A Child, Appellant.**

No. 91–1487.

Court of Appeals of Iowa.

May 28, 1992.

Max I. Exline, Jr., Pueblo, Colo., for appellant.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Sp. Asst. Atty. Gen., and Judy Sheirbon, Asst. Atty. Gen., for appellee State.

Considered by HAYDEN, P.J., and SACKETT and HABHAB, JJ.

SACKETT, Judge.

This appeal follows a dispositional order placing twelve-year-old Mike Smith[1] in a group home for an unspecified period. Mike raises four issues on appeal. He contends (1) the juvenile court did not obtain a proper case permanency plan pursuant to Iowa Code section 232.52(5), (2) that reasonable efforts required by Iowa Code section 232.52(6) were not made to allow him to remain with his parents, (3) the

---

1. The child's initials are M.S. but Mike Smith is    not his name.

court did not follow Iowa Code section 232.-52(7) and order the least restrictive and appropriate placement, and (4) the dispositional order is not valid because it failed to follow Iowa Code section 232.52(1) and state the duration of the disposition. We reverse and remand.

Mike was charged with being a delinquent child as a result of an aggravated assault he committed. Mike admitted committing the offense. The event was explained in the predisposition report of a correction officer:

Mike Smith, on January 26, 1991, did twice point a loaded .22 rifle in the direction of two other youths. The youths were in the Smith's home at the time of the offenses. While pointing the rifle at both boys, Mike asked if they thought the weapon was loaded. Both victims found this act offensive and protested the action by telling Mike to point it elsewhere. It was during the second incident that the mechanism was activated as a result of his trying to eject the live round.

The bullet struck Steve Rapp,[2] age 14, between the eye and nose, causing serious injury. The victim was able to leave the Smith's home and return home. He was then taken to the Ottumwa Regional Health Center, and from there was air lifted to Iowa City for surgery. He was hospitalized for approximately two weeks.

It should be noted that there was no malice involved, and the boys were old friends.

Immediately after the incident on January 26, Mike was removed from his home. On January 29, an order issued without notice or hearing ordering Mike removed. On January 30, a hearing was held. The court found detention was authorized but not warranted. Mike was placed in the custody of his paternal grandmother with the juvenile court officer directed to monitor the placement.

On March 25, Mike was ordered to undergo an in-patient psychiatric evaluation at the Boy's Training School in Eldora. The

period of evaluation was not to exceed thirty days. The Wapello County Sheriff was ordered to transport Mike to Eldora. On April 24, a dispositional hearing was held. The court found (1) Mike had misbehaved at school prior to the event, (2) Mike had above average intelligence but had poor grades, and (3) Dr. Terry Augspurger recommended Mike be returned to his parents' home with further assessment. The court continued the hearing to May 21, to gather additional information, and ordered Mike to be in the custody of the Department of Human Services and the Wapello County Sheriff transport him to a shelter facility.

On May 21, the matter again came on for hearing. The court found that based upon the seriousness of the underlying offense for which Mike was adjudicated, Mike's culpability as reflected by his testimony to the court that he intended to frighten the victim, as well as another youngster, when he pointed the loaded weapon, the apparent lack of proper adult supervision and guidance when the shooting incident occurred, Mike's more positive response in a structured setting and under professional adult supervision, Mike's urgent need for counseling services and positive peer group interaction opportunities, which can be provided best in a structured setting, and other matters contained in the record, that the least restrictive alternative available, appropriate, and in Mike's best interest, is his placement in group home care.

The court further found that reasonable efforts had been made to maintain Mike in his home and to prevent removal therefrom.

The court further found that parental liability should be imposed in the amount of $35.00 per month, which the court found to be less than that recommended by DHS but consistent with the family's economic and financial circumstances.

Two of the grounds Mike contends support our modifying the juvenile court order are whether reasonable efforts were made to keep Mike with his family, and whether the placement made by the trial court is the

---

**2.** The child's initials are S.R. Steve Rapp is not his name.

least restrictive dispositional order. The focus of both of these issues is whether Mike should have been allowed to remain with his parents. Our review is de novo. *See In re J.D.S.*, 436 N.W.2d 342, 349 (Iowa 1989). We find the issue of reasonable services to allow Mike to remain in his home was not adequately addressed by the trial court. We vacate the current dispositional placement and remand to the trial court to take evidence and address the issue of reasonable services. We do not retain jurisdiction.

Iowa Code section 232.52(6) provides:

When the court orders legal custody of a child pursuant to subsection 2 'd,' 'e,' or 'f,' the order shall state that reasonable efforts have been made to prevent or eliminate the need for removal of the child from the child's home.

■ Mike points out that while in the dispositional order the court found reasonable services had been offered, there was no evidence of any attempt to "prevent or eliminate the need for removal of the child from the child's home" in the record, and there was no evidence to support the trial court's findings on this issue.

Mike was removed from his home and taken to shelter care on the day of the incident, January 26. It was not until January 29, that an application for shelter care was made and an ex parte order issued. At a hearing on January 30, Mike was released by a different judge to his grandmother. However, on February 15, he was ordered to Eldora for evaluation. On March 15, he was ordered to a group home pending final disposition. In the April 29, final disposition he was ordered to a group home for an unspecified period.

The State's brief response to the reasonable efforts issue is as follows:

The juvenile court verbally; and in its written disposition order, made the finding that reasonable efforts have been made to prevent or eliminate·the need of removal of the child from the child's home. The district court agreed with the juvenile court's conclusions when it reviewed the case pursuant to Iowa Code section 602.7103 (1991).

The testimony of the juvenile's mother and persons who have investigated his school records indicate he has exhibited behaviors consistent with a hyperactive disorder. He and his brother are home alone for a couple of hours after school without parental supervision. The child said his brother helps him with math homework but that he never brings home other subjects. He has a history of poor grades and fails to complete school work regularly despite the testing which indicates his intelligence level normal to above normal. He has had obvious problems relating to his peers as he had verbal and physical altercations while being evaluated at Eldora and in the shelter care facility.

The juvenile court officer and the shelter care director recommended group home placement for the child as this placement alone would allow for the immediate structure and peer-group/conflict resolution-skill counseling the child needs. The placement also allows for family counseling to these parents so they can learn skills on how to deal with his hyperactive behaviors and help him to approach his problems with peers in a more positive way than the confrontive and insulting patterns he has developed. To place him back home because he has problems relating to his peers is simply ignoring the situation and certainly cannot be seen as a way of dealing with his peer relationship problems.

The State's argument falls short in addressing what reasonable efforts have been expended to attempt to have Mike stay in his home.

First, the State's argument Mike has had problems does not support a finding reasonable efforts have been made. Mike would not be before the court if he did not have problems. The problems Mike has had form the basis for identifying the efforts necessary to keep him in his home.

The problems the State's argument shows need to be addressed are (1) Mike committed a serious delinquent act, he must recognize the seriousness of the act, and society must be protected from such

acts, (2) Mike is hyperactive, (3) Mike and his brother were home alone after school without parental supervision, (4) Mike has a history of poor grades, does not work to his potential, and does not do enough homework, and (5) Mike has problems relating to his peers.

The trial court made no factual findings to show the reasons it determined reasonable efforts had been made. The State, other than the one statement "that only the group home would allow for immediate structure and peer-group/conflict resolution-skill counseling," gives us no evidence of why the services cannot be delivered in the home. We review the entire record to determine whether it supports the trial court's findings.

The first issue is, can society be protected if Mike is left in his home.

Dr. Augspurger, who evaluated Mike while he was in Eldora, said:

Past history and current appearance would not suggest that this boy needs to be at the Training School. History and current behavior would not suggest that he is likely to be a severe risk if given probation. I do not see evidence for runaway, property crimes, premeditated malicious assaults, etc. Available information would indicate the crime that the delinquent behavior in question resulted from impulsive and careless behavior and, therefore, treatment should be aimed at helping to correct those inherent problems and providing enough safety within his environment so as to decrease chances that it will be repeated. I think this boy would be a good candidate to return home under terms of probation along with further evaluation and treatment for his Attention Deficit Disorder. If this is not felt appropriate, then a group home or community-based residential treatment facility should be considered.

There is little evidence to contradict this evaluation. The State relies heavily on a statement Mike made while in the group home that he would shoot a stronger boy who had hurt him if he hurt him again. The incident would be insignificant were it not for Mike's background. While in the home, Mike had not retaliated on several occasions when other children used physical force against him. He did not retaliate with physical force on this occasion. He did make the statement. The juvenile officer filing a report of that incident questioned the seriousness of Mike's threat, as it is fairly normal for boys to threaten bodily harm during heated arguments and the other boy had hit Mike. The officer did consider this statement poor judgment on Mike's part, in light of his current situation. There is nothing in this record to suggest that society will be at serious risk if Mike is allowed to remain in his home.

The next problem is, can Mike's hyperactivity be corrected if he remains in his home. Mike's hyperactivity contributed to his conduct on the day of the shooting. Dr. Augspurger's statements, and the report from Eldora, show when Mike went to Eldora, Eldora had little information about Mike's family and home.

To identify and attempt to treat the attention disorder, community based mental health services are available and can be delivered to the child while he resides in his home. The evidence of community based services is sketchy. It comes principally from an employee of the group home who, while admitting the required services are available in the community, advanced the opinion the services would be more effective in the group home because it is more structured.

We recognize the person advancing this opinion has expertise in this area. We also consider his interest as an employee of the group home in weighing his opinion. The group home wanted to keep Mike as a resident.

The next problem that needs to be addressed is after school care. There is no evidence after school care programs or structured activities are not available in the Ottumwa area or could not be made available to Mike. Mike had been left home after school with an older brother. Mike was twelve years old. While, for a number of children this care situation would be appropriate, Mike at this time needs more

supervision. Mike has a grandparent in the area, his parents recognize a change is needed and indicated they will provide more supervision. Mike's mother has agreed to quit her job to be available in the summer months. Obviously, there are some after school care programs and structured after school activities available in the Ottumwa area. These have not been explored. There is nothing in this record to show a reasonable form of supervision is not available combining more parental supervision and community and school based services.

The next problem to be addressed is Mike's peer relationships. Mike argues, and we agree, the problem he has in peer relationships has probably been intensified by his placement in a group home with a number of other young men. Mike does not get along very well with the other young men at the shelter. Mike would not be in constant contact with other young men in his home environment. We recognize the dangers in placing a young child in an environment where he or she may come in constant contact with other children with severe problems. The staff at the shelter has reported, "Mike has had no problems following staff directives, and does as he is told. The excessive horseplay has ceased, but he does engage in age-appropriate and harmless silliness at times. The staff seems to enjoy him, and he has had no problems with female residents." Mike's hyperactivity increases when in the company of a number of male contemporaries. Mike may be a person who will need to avoid confrontive situations. Mike's problems with peer relationships is not being corrected in the shelter. His hyperactivity may be best helped by living with his parents and his brother and sister.

The next problem is Mike is not working up to his academic potential. His parents have not put the emphasis on academic excellence. Children perform differently in school at different periods of their lives. While we would hope all children work to their highest academic potential, we recognize this does not always happen. Mike's hyperactivity causes him problems academically. Mike's mother expresses a willingness to start assisting Mike with school work. There obviously are programs available in the Ottumwa school and community that can assist Mike in improving his school work, and in instructing his mother and father in ways to assist him with his school work. Reasonable efforts require these alternatives be identified.

Reasonable efforts plainly were not adequately addressed. Reasonable efforts were not addressed at all before Mike was removed from his home and ordered to Eldora for evaluation and then placed in a group home. By the time of the final dispositional hearing, Mike had already spent over two months in Eldora and the group home.

Once information was gathered on Mike's parents, it was learned Mike's parents, born in 1952 and 1955, are an intact family. They live a short distance outside the town of Ottumwa. The home is very modest but clean. There are three children in the family. The family's out yard is well kept and they have a large yard and garden spot. Mike's paternal grandmother, with whom he has a good relationship, lives in the area.

Mike's parents are available to be with their children in the morning before school, but there is no supervision from 3:45 p.m. to 5:00 p.m. Mike's parents have no history of any criminal involvement except Mike's father had an OMVI ten years ago.

The oldest child, born in 1975, is in high school, and has had some minor problems.

Mike's parents were found to be "open and straightforward" with the interviewing worker. The worker determined the supervision the children are reported to have received seemed age appropriate and reasonable. The only evidence Mike and his siblings have not been supervised comes from testimony of the probation officer to hearsay statements of the parents of the child who was shot. Mike's attorney argues these statements are colored by a civil action that is to be filed. We note these parents let their child go to the Smith home when no adults were present.

Mike's father has taken steps to remove the guns from his home and deny his children access to guns. Mike's parents testified they would be willing to provide intensive supervision for Mike, would be willing to cooperate to see Mike received counseling and treatment. They also agreed to drive Mike to and from school, to cooperate with the probation officer, to assist Mike with homework, to keep alcoholic beverages out of their home, and to provide Mike with love and attention. There is no evidence or even a suggestion in the record Mike's parents are not sincere in these promises.

This was a tragic event. Our de novo review of this record convinces us the root of the problem was the Smiths leaving guns and ammo in an area where unsupervised young boys would have access to them. Mike did not have adequate instruction on the danger of guns. The young boys in the neighborhood lacked supervision in being allowed in a home where parents were absent. Mike's parents have had the guns removed.

We reverse and remand to the trial court. There is not sufficient evidence to support the trial court's finding that reasonable efforts could not have prevented the removal of Mike from his home. The trial court shall hold a hearing to determine whether with reasonable efforts Mike can remain in his home. The State shall show what has been done to allow him to stay at his home.

We recognize too that Mike's placement in a group home will require a considerable expenditure of state funds. The parents have only been ordered to pay $35 a month toward Mike's out of home placement. At a time of tight state budget, it is particularly important that reasonable efforts be made to keep children with their families so precious state funds can be reserved for children that truly need to be placed in expensive custodial facilities.

The attorney for Mike in effectively advocating for his client has an obligation to show the court that services are available and with them Mike can remain at his home. The reasonable efforts requirement provides Mike's attorney a strong tool for enforcing Mike's rights to services and family integrity.

Mike also has argued the disposition was not the least restrictive, and he should have been placed with his parents. The trial court in addressing reasonable efforts will also address this issue.

■ Mike further argues the trial court's order does not comply with the provision of Iowa Code section 232.52 that provides:

> ... the order shall specify the duration and nature of the disposition....

The State does not address the fact that 232.52 clearly provides, "The order shall specify the duration and nature of the disposition." The State argues we look at 232.53, which provides:

> Any dispositional order entered by the court pursuant to section 232.52 shall remain in force for an indeterminate period or until the child becomes eighteen years of age unless otherwise specified by the court or unless sooner terminated pursuant to the provisions of section 232.54. No dispositional order made under section 232.52, subsection 2, paragraph "e" shall remain in force longer than the maximum possible duration of the sentence which may be imposed on an adult for the commission of the act which the child has been found by the court to have committed.

The trial court's order did not follow the directive of section 232.52.

We find it unnecessary to address the fourth issue raised by Mike. Costs on appeal are taxed to the State.

REVERSED AND REMANDED.

HAYDEN, P.J., specially concurs.

HABHAB, J., dissents.

HAYDEN, Presiding Judge (specially concurring).

I concur in the result only.

HABHAB, Judge (dissenting).

I respectfully dissent. I would affirm the juvenile court. I believe Mike will receive more help in a group setting.