In the Interest of B.L., a Child,

B.L., a Child, Appellant.

No. 91–1469.

Court of Appeals of Iowa.

Aug. 27, 1992.

Linda Del Gallo, State Appellate Defender, and Patricia J. Cone–Fisher, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Sp. Asst. Atty. Gen., and Charles K. Phillips, Asst. Atty. Gen., for appellee State.

Heard by OXBERGER, C.J., and DONIELSON and SACKETT, JJ.

SACKETT, Judge.

Appellant Bob Lewis,[1] found to be a delinquent child, appeals an order placing him in a residential treatment facility outside the State of Iowa. Bob contends it is not the least restrictive available placement and that reasonable efforts were not made to allow him to stay in a parental home. We find the court failed to address the issue of reasonable efforts and least restrictive available placement. We remand for that purpose.

Bob was born August 23, 1974. His parents were divorced, and he spent the first fifteen and one-half years of his life in his mother's custody.

In October of 1989, a petition was filed claiming Bob was a delinquent child. The petition charging Bob was delinquent recited that Bob took a bicycle and a motor vehicle. A cursory order was entered finding Bob guilty of the offenses with which he was charged. The file does not contain other information concerning the events relating to the offenses.

After Bob was found to be a delinquent child, he was put on probation and left in his mother's care. His mother was unable to work with him to correct his problems. The State sought revocation of Bob's probation because (1) Bob didn't follow curfew, (2) Bob smoked cigarettes, (3) Bob didn't obey his mother, and (4) Bob skipped school. After the petition to revoke his probation was filed, Bob ran away from his mother's home and failed to appear for the hearing on the revocation of his probation. A warrant issued for his arrest, and he was taken to Meyer Hall in Polk County. Bob then went to the State Training School in Eldora, Iowa, for a thirty-day evaluation, and on the recommendation of their personnel, Bob was returned to the custody of his mother on May 7, 1990. Again Bob's placement in his mother's custody did not prove successful. Bob's mother takes a very rigid stand on issues of Bob's behavior, and mother and son are unable to negotiate what is acceptable behavior for Bob.

On July 31, 1990, the State filed an application to revoke Bob's probation because (1) Bob failed to obey rules and curfews, (2) Bob did not do chores, (3) Bob had not obeyed all laws,[2] and (4) Bob admitted to having drugs in his system.

On August 8, 1990, Bob's probation was revoked and Bob was placed at Eldora. Bob was discharged from Eldora in June of 1991 and placed at the Woodland Heights treatment facility. On June 30, 1991, Bob ran away from Woodland Heights, and on July 3, 1991, a warrant issued for Bob's arrest, and he was again taken to Meyer Hall. On August 9, 1991, Bob was placed in the custody of his father, who lived in Iowa but was outside the Polk County area. In releasing Bob to his father, no effort was made to involve Bob in programs in his father's area of the state.

On August 15, 1991, just six days after he had been released to his father, Bob was a passenger in a car that was stopped by police. The police found several stolen items in the vehicle. Bob denied stealing any of the items. Bob also denied having knowledge beforehand that his companions intended to steal the items. Bob was not charged or found guilty of any offenses as a result of the stop.

---

**1.** B.L. is the child's initials. Bob Lewis is not his given name.

**2.** The application fails to specify the laws he allegedly has broken.

After the stop, Bob returned to his father's home. The police called Bob's father's home and requested Bob come to the police station and make a statement. Bob testified that after receiving this phone call, he was scared and he left his father's home without his father's permission. Bob was gone for three hours, but voluntarily returned home and talked to his stepmother about his problems.

On August 27, 1991, a hearing was held to review Bob's case. At the commencement of the hearing, the State recommended Bob be returned to Meyer Hall. Bob's father and stepmother wanted Bob to remain with them. Bob's mother wanted Bob in detention.

At the hearing, both Bob's father and stepmother testified that Bob had made a good adjustment in their home, he had on his own enrolled in school, and he was seeking a job. Bob's father and stepmother were making an effort to see Bob receive counseling and, while a counseling schedule was not yet established, Bob's stepmother testified about available services for Bob. She had contacted a mental health center for therapy and treatment of Bob and the family.

On September 10, 1991, the court entered an order placing Bob with the Department of Human Services for placement in a residential treatment facility. As a result of this order, Bob has been placed in a facility in South Dakota.

 Bob contends the placement made by the trial court is not the least restrictive dispositional order. Our review is de novo. *In re Meek,* 236 N.W.2d 284, 289 (Iowa 1975). We find the issue of reasonable services to allow Bob to remain in his father's home was not adequately addressed by the trial court nor was the issue of least restrictive disposition. We vacate the current dispositional placement and remand to the trial court to take evidence and address the issues of reasonable services and least restrictive disposition. We do not retain jurisdiction.

Iowa Code section 232.52(1) provides:

Pursuant to a hearing as provided in section 232.50, the court shall enter the least restrictive dispositional order appropriate in view of the seriousness of the delinquent act, the child's culpability as indicated by the circumstances of the particular case, the age of the child and the child's prior record. The order shall specify the duration and the nature of the disposition, including the type of residence or confinement ordered and the individual, agency, department or facility in whom custody is vested.

Iowa Code section 232.52(2)(e)(2) provides the juvenile court may enter:

An order transferring the guardianship of the child, subject to the continuing jurisdiction of the court for the purposes of section 232.54, to the commissioner of the department of human services for purposes of placement in the state training school or other facility provided that:

\* \* \* \* \* \*

(2) The court finds such placement to be in the best interests of the child or necessary to the protection of the public.

Iowa Code section 232.52(6) provides:

When the court orders the transfer of legal custody of a child pursuant to subsection 2, paragraph "d", "e" or "f", the order shall state that reasonable efforts have been made to prevent or eliminate the need for removal of the child from the child's home.

Bob argues that while in the dispositional order the court found reasonable efforts had been offered, there was no evidence of any attempt to "prevent or eliminate the need for removal of the child from the child's home" in the record, and there was no evidence to support the trial court's findings on this issue. The trial court's order, while finding reasonable efforts had been made, made no factual findings supporting its conclusion. Therefore, we have no guidance from the trial court as to what factors it considered in determining reasonable efforts had been made. We make our own independent review of the record on this issue.

Iowa Code section 232.52(7) provides:

If the court orders the transfer of the custody of the child to the department of human services or to another agency for placement in foster group care, the department or agency shall make every reasonable effort to place the child within the state, in the least restrictive setting available and in close proximity to the parents' home, consistent with the child's best interests and special needs, and shall consider the placement's proximity to the school in which the child is enrolled at the time of placement.

The State, in arguing that reasonable efforts have been offered, says if Bob's problems are not dealt with now, Bob will soon turn eighteen and any future dispositions in the adult system will be far more restrictive. The State also contends Bob's placement was the least restrictive option because Bob had a history of running away from less restrictive options. The State argues in its brief that Bob's two-year history of involvement with the juvenile justice system warrants a fairly severe placement, and he (Bob) should be deemed fortunate that he was not returned to the State Training School.

The State's argument Bob has had problems for two years does not support a finding reasonable efforts have been made. The problems a child has form the basis for determining what efforts are necessary to keep the child in his or her home.

In any reasonable efforts analysis, an early issue that must be addressed is "can society be protected if the child is left in his or her home?" The State does not argue society will be at a serious risk if Bob is left in his father's care. We find nothing in this record to suggest that society will be at serious risk if Bob is allowed to remain in his father's home. In fact, we note that Eldora released Bob twice for in-home placement.

Having determined there is not evidence Bob will be a risk to society if left in his father's care, we need next determine what services are necessary to assist Bob in correcting his problems.

Bob has broken laws, cannot live under the rules of his mother's home, and has exhibited a tendency to run rather than to face his problems. He and his mother have had serious difficulties communicating. There also is evidence Bob may suffer from the adverse influence of friends he has had in the Des Moines area. Prior placements in residential facilities have either not been satisfactory or the facility personnel have determined Bob did not require their services.

Bob needs structure and direction. He needs to learn respect for people and rules. He needs to be in a situation where people care about him. He also needs counseling services; he needs to stay in the educational system; and he needs positive activities outside school to occupy his free time.

Bob's father and stepmother stand ready to give him structure, direction, and love. Bob had enrolled in high school. While Bob had a problem when in his father's care, he curtailed his original plan to run and was able to talk to his stepmother about the problem. In Bob's father's home he has established a relationship with half-siblings. If Bob remains in his father's home, Bob will need counseling and other community-based services. The evidence of the availability of community-based services is sketchy. The only evidence comes from Bob's stepmother, who testified community-based mental health services are available and can be delivered to Bob while he resides in his father's home. We find Bob's stepmother's testimony about community-based services to be credible.

Evidence that the State relied on in supporting the need for out-of-home placement focused primarily on the testimony of Bob's probation officer that the probation officer had made four referrals regarding Bob's placement. The probation officer said three of the referrals were out-of-state facilities. The probation officer related one of the out-of-state facilities felt Bob was a "light candidate in that he had not committed the serious offenses which most juveniles that are there for."

Bob's probation officer testified to his recommendation of placement at an out-of-state facility in the Missouri River Adolescent program as follows:

Q. Why do you feel that facility would be appropriate? A. I have sent over juveniles there. They have done very well. It's a program where he would be away from his old stomping grounds in Des Moines, Iowa. He was sent to the Boys Training School and did struggle for a period of time through the training school, and I feel that at this time we are in need of an out of state placement which can address those needs.

In reviewing the testimony of the probation officer, we note that Bob's father's home is a considerable distance from his "old stomping grounds" in Des Moines. We also note the Boys State Training School twice released Bob for in-home placement. Additionally, the probation officer's testimony does not give us any specific reasons why the "out-of-state" placement is necessary to address Bob's problems. The probation officer's general statement that other juveniles have done well in the program is of little value. Each child who comes into our system has his or her individual and unique problems. A recommendation that a child be put in a facility should be accompanied by specific reasons why the recommended placement meets the child's individual needs. The probation officer's testimony did not address the reasonable services issue.

The short period of time Bob spent with his father was inadequate to serve as an indicator of whether placement would be successful. There are no guarantees the placement in his father's home will be successful, but there also are no guarantees the recommended out-of-state placement will be successful. Bob was placed in his father's home without guidance and assistance.

We find the court failed to address the issue of the least restrictive available placement as required by Iowa Code section 232.52(7), and we remand for that purpose. There is not sufficient evidence in the record before us to support the trial court's finding that reasonable efforts could not have prevented the removal of Bob from his father's home, or that a less restrictive placement is not available. The trial court shall hold a hearing to determine whether with reasonable efforts Bob can remain in his father's home.

The attorney for Bob, in effectively advocating for his or her client, has an obligation to show the court that services are available and with them Bob can remain at his home. The reasonable efforts requirement provides a child's attorney a strong tool for enforcing client's rights to services and family integrity.

We remand to the trial court. We do not retain jurisdiction. Costs on appeal are taxed to the State.

REMANDED.

OXBERGER, C.J., concurs.

DONIELSON, J., dissents.

DONIELSON, Judge (dissenting).

I respectfully dissent. I would affirm the dispositional order of the juvenile court. I believe the juvenile court adequately considered and addressed the issues of reasonable efforts and of the least restrictive available placement. I would not remand these issues to the juvenile court.

The dispositional order placing Bob in a residential treatment facility is clearly the least restrictive option, based on the reasonable efforts that have been made to prevent an out-of-home placement during Bob's two-year history with the juvenile justice system. Since October of 1989, when Bob was first adjudicated to be a delinquent child, Bob has been in and out of various placements, including placements in group homes, with his mother, with the Eldora State Training School, and finally with his father.

However, none of these placements has been successful. Since the adjudication in October 1989, Bob has run away from at least four previous placements, demonstrating Bob's inability to handle any less restrictive options. He even briefly left his father's home, the placement which Bob is now requesting, without permission. In addition, he has had his probation revoked two times, based on behavior such as: violating curfew, skipping school, not doing

**794**

chores, drug use, and generally disobeying his mother. He has been implicated in several thefts, including being picked up in a stolen vehicle, and being picked up in a car which contained stolen compact discs and a stolen compact disc player.

I do not agree with the majority's conclusion that there was no evidence to support the trial court's findings that reasonable efforts had been offered to prevent the need for removal of the child from the child's home. Furthermore, in light of the above findings, I find the juvenile court properly entered the least restrictive dispositional order according to the factors as laid out in Iowa Code section 232.52(1) (1991). Under section 232.52(1), the court shall consider "the seriousness of the delinquent act, the child's culpability as indicated by the circumstances of the particular case, the age of the child and the child's *prior record*" (emphasis added).

Since October 1989, Bob has been placed back with his mother on two different occasions. Although Bob was only placed with his father on one occasion, it took less than a week for Bob to come into trouble with the law, when he was a passenger in a car in which the stolen compact discs and compact disc player were discovered. I agree with the juvenile court's finding that such activity, at the least, demonstrated very poor judgment on Bob's part.

I do not agree the short period of time which Bob spent with his father was inadequate to serve as an indicator of whether placement would be successful. In order to gauge the probability of a successful placement, the placement must be considered in light of not only the period of time Bob spent with his father, but also in light of Bob's lack of success with previous in-home placements. The short amount of time which passed before Bob again found himself in trouble indicates a placement with his father probably would not have been any different.

I agree with the majority that Bob needs a placement which offers structure and direction. Bob needs counseling services and he needs to stay in the educational system. However, I do not agree placement with

Bob's father is warranted. The juvenile court properly considered the reasonable efforts which had been made in the previous two years. In light of these considerations, the juvenile court properly ordered the least restrictive disposition, placing Bob in a residential treatment facility.

I would affirm the order of the juvenile court.