**In the Interest of N.W.E., Minor Child,**

**N.W.E., Appellant.**

**No. 96–1337.**

Court of Appeals of Iowa.

March 28, 1997.

Gilbert R. Caldwell, III of Caldwell, Caldwell & Caldwell, P.L.C., Newton, for appellant.

Thomas J. Miller, Attorney General, Diane Stahle, Special Assistant Attorney General, Maureen McGuire, Assistant Attorney General, R. Steven Johnson, County Attorney, and John C. Heinicke, Assistant County Attorney, for appellee-State.

Heard by HABHAB, C.J., and HUITINK and VOGEL, JJ.

VOGEL, Judge.

The State alleged N.W.E. (Nicholas) committed the delinquent acts of discharging a handgun, in violation of a city ordinance, and terrorism with intent to provoke fear or anger, in violation of Iowa Code section 708.6 (1995). The court found Nicholas committed both delinquent acts. Following the dispositional hearing, the court transferred temporary custody and guardianship of Nicholas to the Department of Human Services for commitment to the state training school for boys.

Nicholas appeals.

**Scope of review.** Our review of juvenile matters is de novo. *In re J.D.S.,* 436 N.W.2d 342 (Iowa 1989). We accord weight to the findings of the trial court, especially when considering the credibility of witnesses, but we are not bound by them. Iowa R.App. P. 14(f)(7).

*Background facts.* On March 15, 1996, two groups of juveniles chased each other around town, in their cars, during the evening. Two of the juveniles, Ron and Brandon, had a verbal exchange earlier in the day at school. The two groups were divided as follows: Nicholas, Brandon, Ben, and an unknown juvenile on one side; and Ron, Dustin, and Danny on the other. Eventually, the two groups met up at Brandon's residence. Nicholas, Brandon, Ben, and the other juvenile were in Brandon's yard when the other group approached. Ron came onto Brandon's property, and he and Brandon engaged in a verbal confrontation. Brandon told Ron to leave but he refused. No physical confrontation took place. Nicholas, believing Ron would start a fight, pulled out a handgun and fired one round into the air at a forty-five degree angle.

**I. Self-defense.** Nicholas contends the court erred in failing to find that he acted in self-defense. A person is justified in the use of reasonable force when the person reasonably believes that such force is necessary to defend oneself or another from any imminent use of unlawful force. Iowa Code § 704.3 (1995). When self-defense has been raised in a case, the prosecution must establish nonexistence thereof beyond a reasonable doubt. *State v. Cruse,* 228 N.W.2d 28 (Iowa 1975). The court rejected Nicholas's self-defense claim because no one made any potentially threatening statements to Nicholas or anyone in his group. Although Nicholas claims he was placed in fear after hours of back and forth bullish behavior by both groups of boys, the credibility of witnesses according to the trial court and the weight of the evidence does not support this position. There was no reason to believe anyone was armed or in imminent danger of injury that would justify Nicholas's use of a handgun.

**II. Within an assembly of people.** Nicholas next argues that the court erred in finding he discharged a weapon "within an assembly of people." A person commits an act of terrorism when the person, with the intent to injure or provoke fear or anger in another, shoots, . . . or discharges a dangerous weapon . . . within an assembly of people, and thereby places the . . . people in reasonable apprehension of serious injury. . . . Iowa Code § 708.6 (1995). The court determined Nicholas fired the handgun "within an assembly of people" because there were four persons in front of him and two on each side of him. All persons were placed at risk when the gun was fired.

Nicholas refers us to *State v. Bush* 518 N.W.2d 778 (Iowa 1994) arguing that he did not fire the gun "into or through two or more persons at the same place," as the *Bush* court concluded. We think that is too narrow of a reading of *Bush.* In *Bush* the court noted the legislature, by not defining "within an assembly of people," intended the phrase to have its common and ordinary meaning. *Bush,* 518 N.W.2d at 780 (citing *State v. Hennenfent,* 490 N.W.2d 299, 300 (Iowa 1992)). The assembly in *Bush* consisted of one person in front of the defendant, a couple of people crouching behind a car nearby, and approximately ten people behind the defendant. All were within fifteen to twenty feet of the defendant. From that description, the court reasoned that the jury could reasonably have found the defendant was:

> . . . within a ring or people when he fired the shot and that these people were within range of the handgun. Though the evidence is conflicting, the jury could also reasonably find that [the defendant]fired the shot *through* this ring of people, thereby subjecting them to the obvious risk of severe injury or even death. From these findings, the jury could easily infer that [the defendant]fired his gun "within an assembly of people" under section 708.6.

*Id.* at 780. (Emphasis in original.) We find the trial court was correct in finding Nicholas fired the gun "within an assembly of people."

**III. Specific intent.** Nicholas next contends the court erred in finding the specific intent element of "fear" was proven by the state. Because terrorism is a specific intent crime, the State must prove the victim(s) actually experienced fear of serious injury from Nicholas's act. *See State v. White,* 319 N.W.2d 213, 215 (Iowa 1982). The court accepted Ron, Dustin, and Danny's testimony that they felt fearful when Nicholas discharged the handgun. Ron testified that after Nicholas pulled the gun out, "I thought he was going to shoot me then. And then he did pull the trigger, and then I was in the fear of my life and then after he shot it in the air, then I said, 'Go ahead and shoot me. See if you get away with it. See how far it will get you.'" Ron then turned around and left. Based on the trial court's assessment of the credibility of the witnesses, we find the court correctly found a specific intent element as the persons around Nicholas were put in fear when he fired the gun.

**IV. Placement.** Finally Nicholas argues the court erred for not finding reasonable efforts had been made to prevent the need for removal from his parent's home and erred in placing him at the State Training School for Boys. The State's argument is that

given Nicholas's history, anything short of placement at Eldora would be futile.

Iowa Code section 232.52 contains the following regarding placement out of the home following adjudication:

2. The dispositional orders which the court may enter subject to its continuing jurisdiction are as follows:

e. An order transferring the guardianship of the child, subject to the continuing jurisdiction and custody of the court for the purposes of section 232.54, to the director of the department of human services for purposes of placement in the state training school or other facility, provided that the child is at least twelve years of age and the court finds the placement to be in the best interests of the child or **necessary for the protection of the public**, and that the child has been found to have committed an act which is a **forcible felony**, as defined in section 702.11, or a felony violation of section 124.401 or chapter 707, or ...

. . . .

6. When the court orders the transfer of legal custody of a child pursuant to subsection 2, paragraphs "d", "e", or "f", **the order shall state that reasonable efforts have been made to prevent or eliminate the need for removal of the child from the child's home.**

*Id.* (Emphasis added.)

In this case, a dispositional hearing was held on June 7, 1996. In addition to the testimony received, a predispositional report prepared by the juvenile court officer, was admitted into evidence. The report detailed Nicholas's prior juvenile court involvement, intervention services, educational information, social history and contained recommendations for disposition to the court.

▉ In the dispositional order, the court found the least restrictive disposition was for legal custody and guardianship of Nicholas to be transferred to the Iowa Department of Human Services for purposes of placement at Eldora. The court found such placement was in the best interest of Nicholas and necessary for the protection of the public, given the seriousness of the offenses and

Nicholas's prior involvement with the court. All of those findings complied with section 232.52(2)(e). However, the court did not complete its findings pursuant to section 232.52(6), that reasonable efforts had been made to prevent removal of Nicholas from his home. *See In re B.L.*, 491 N.W.2d 789 (Iowa App.1992); *In re M.D.S.* 488 N.W.2d 715 (Iowa App.1992).

▉ The troublesome task a juvenile court must face is to reconcile the application of two code sections. Section 232.52(2)(e) provides for placement at a training school for the "protection of the public." Given the fact that a juvenile has been found to have committed a forcible felony, it follows that the public needs protection from the juvenile and placement at such a facility would accomplish that goal. However, for the court to comply with section 232.52(6), reasonable efforts to prevent removal from the child's home must be found *before* placement at a training school can occur. As construed in our case law, "reasonable efforts" could include counseling and other community based services. *See In re B.L.* 491 N.W.2d 789 (Iowa App.1992).

The juvenile court must make its findings pursuant to the requirements of both code sections which could lead to conflicting results: 1) protecting the public from a juvenile found to have committed a delinquent act, and 2) assuring the juvenile is not removed from his family home without reasonable efforts to prevent the removal. Clearly, a literal application of these two code sections could result in competing interests and impossible application.

▉ The State argues the failure to raise this defect of the dispositional order was waived as N.W.E failed to file a 179(b) motion. Under our rules of civil procedure, an issue which is not raised at the trial court may not be raised for the first time on appeal. *Conner v. State*, 362 N.W.2d 449, 457 (Iowa 1985). In district court, when a ruling fails to address an issue properly submitted, the method to preserve such error is to file a 179(b) motion. *State Farm Mut. Auto. Ins. Co. v. Pflibsen*, 350 N.W.2d 202, 206–07 (Iowa 1984). Because juvenile pro-

ceedings are to be conducted in an informal manner, not all of the rules of civil procedure are applicable in juvenile cases. *In re Hewitt,* 272 N.W.2d 852, 859 (Iowa 1978). However, Rule 179(b) has been held to apply to juvenile court termination proceedings *(see In re A.R.,* 316 N.W.2d 887, 889 (Iowa 1982)), and to juvenile court CINA proceedings *(see In re A.M.H.,* 516 N.W.2d 867, 872 (Iowa 1994)). The logic supporting the application of Rule 179(b) to juvenile proceedings is that its application is not inconsistent with the informality of such proceedings. *In re A.R.,* 316 N.W.2d 887, 889 (Iowa 1982). Specific application of the rule to juvenile dispositional orders in delinquency proceedings has not been addressed in our case law. In determining whether such application is appropriate, we consider the necessity of a 179(b) motion not only in juvenile CINA and termination cases, but also in criminal sentencing orders. For a defendant to attack a sentencing order, a 179(b) motion is not required. *See State v. Boltz,* 542 N.W.2d 9, 10 (Iowa App.1995) (finding error was preserved by defendant timely raising issue of defective sentencing order on appeal); *see also State v. Thomas,* 520 N.W.2d 311, 313 (Iowa App. 1994) (noting preservation rule not ordinarily applicable to void, illegal, or procedurally defective sentences). Thus, a direct appeal is sufficient for the issue to be preserved for review. We find a dispositional order following a juvenile delinquency hearing to be more akin to the criminal order following a criminal plea or conviction. As such, no 179(b) motion was necessary to preserve N.W.E.'s attack on the dispositional order.

■ It would, however, be far more efficient and serve the interests of all concerned to bring a defect in a dispositional order to the attention of the juvenile court, either immediately or within the time frame required for a 179(b) motion. Under either method, it could be quickly remedied. The long journey of appellate review may result in the issue being moot before it is decided on review. Recognizing this possibility, we remand for further dispositional hearing, in the event the issue is not moot.

The adjudication of the juvenile court is affirmed; the disposition is remanded.

**AFFIRMED IN PART AND REMANDED WITH DIRECTION.**