# IN THE COURT OF APPEALS OF IOWA

No. 15-0532
Filed August 5, 2015

**IN THE INTEREST OF R.P.,**
    **Minor Child,**

**R.F., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Scott County, Christine Dalton, District Associate Judge.

A mother appeals from a juvenile court order terminating her parental rights and changing the permanency goal from reunification with her to permanent placement with a foster home. **AFFIRMED.**

Barbara E. Maness, Davenport, for appellant.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd and Kathryn K. Lang, Assistant Attorneys General, Michael Walton, County Attorney, and Julie A. Walton, Assistant County Attorney, for appellee.

Matthew Hatch of Hatch Law, Bettendorf, attorney and guardian ad litem for minor child.

Considered by Vogel, P.J., and Doyle and Mullins, JJ.

**MULLINS, J.**

A mother appeals from a juvenile court order modifying the permanency goal from reunification with her to permanent placement with a foster home and terminating her parental rights. The mother contends the State did not prove the child could not have been placed with her at the time of the termination hearing or within a reasonable time frame, and the termination is not in the best interest of the child.[1]

## I.     BACKGROUND FACTS AND PROCEEDINGS

The child in this case, R.P., was born in April 2014. When R.P. was eleven days old, she was removed from her mother's care for a variety of reasons at the time, including: the mother's two other children in Iowa had been removed, a third child in Texas was no longer in her custody, and the mother lived in a traveling trailer behind an abandoned house with no electricity or running water. The mother suffers from an untreated mental illness and has an intellectual disability with a lower-than-average IQ. The mother depended financially on her boyfriend of four months, and despite previous attempts to provide services, the mother had not gained the ability to stabilize her life or mental health concerns. The State filed a petition to adjudicate R.P. a child in

---

[1] We are in receipt of the mother's pro se filing. The State moved to strike this filing in light of its untimeliness and inclusion of matters outside the record. We agree. The district court considered all the evidence presented and found contrary to her now reasserted arguments. *See* Iowa R. App. P. 6.204(2) (noting what may be included in the court record on appeal from a termination-of-parental-rights case). Moreover, we do not consider the request for an alternative placement. That issue was not raised or decided by the juvenile court and is waived. *See In re N.W.E.*, 564 N.W.2d 451, 455 (Iowa Ct. App. 1997) ("Under our rules of civil procedure, an issue which is not raised at the trial court may not be raised for the first time on appeal.").

need of assistance (CINA) under Iowa Code sections 232.2(6)(b), (c)(2), and (n) (2013), and the court adjudicated R.P. a CINA under those grounds. The mother's parental rights were terminated in an order dated March 11, 2015. The court considered the following facts in coming to its conclusion.

The mother had inconsistently attended visitations with her child. During her time with R.P., the mother had not demonstrated she could properly parent her daughter. The mother has taken her baby outside in freezing temperatures to smoke, or alternately has left the baby alone while she smoked outside, despite care coordinators telling her multiple times neither action is appropriate. The mother has not demonstrated she can provide basic physical needs for her baby such as bathing her and trimming her nails. The mother has not been able to remember when to feed her child and has attempted to feed her eight-month-old baby a sucker. The mother leaves R.P. in her car seat during visitations, sometimes as much as three and a half hours on a four-hour visit, and has to be reminded to speak and to make eye contact with R.P. The mother consistently demonstrates a lack of understanding of R.P.'s level of development for her age and does not speak appropriately or act appropriately towards R.P. given her ability to understand. The mother has been uncooperative with getting R.P. evaluated for developmental delays, despite being shown milestones her child should have reached.

The mother has not consistently shown she can maintain a safe environment for R.P. While the mother maintained an apartment for several months leading up to the termination, she previously has been homeless and

resided in a travel trailer with no electricity or running water. As R.P. has become increasingly mobile, the mother has not eliminated choking hazards such as cigarette butts and debris on the floor. The mother has no employment. Prior to getting her social security disability benefits reinstated, the mother was financially dependent on her boyfriend, who has a conviction for a sex offense in another state.

The mother had stopped dealing with her mental-health issues. The juvenile court found that she recently became compliant on taking her medications and had arranged to again meet with a therapist. Healthcare professionals have predicted the condition of the mother's mental health will deteriorate, with little hope of rehabilitation, jeopardizing R.P.'s long-term placement with her mother.

The mother was previously involved in CINA cases with her two other children, D.L. and J.F. D.L. was removed after an investigation in Missouri, where the mother left her three-and-a-half month old baby in a stroller alone in an abandoned church while she collected her belongings in order to move. The mother then transported D.L. to Iowa to give the child up for adoption to a woman she had met online, who she later learned had her own children removed and whose husband was a sex offender. The mother's parental rights to D.L. were terminated in 2010. J.F. was removed from the mother's care in an Iowa City homeless shelter because the mother was having difficulty caring for her baby without assistance from the shelter staff. The mother had no employment and no place to live. She was prescribed medication for her mental health issues but did

not take the medication. The mother consented to the termination of her rights to J.F. in 2011 so she could move to Texas.

In addition to the two children who were removed from the mother's care in Iowa, the mother no longer has custody over a third child in Texas, T.F. T.F. was born in December 2011, and removed over concerns the mother could not properly care for her baby. The mother would walk long distances with the baby in inappropriate weather or at night in unsafe neighborhoods. The mother maintained an unsuitable home, with trash and cockroaches littering the floor. The mother was not washing bottles before reusing them. The mother slapped the child in the face and verbally abused her, and did nothing to prevent harm to her daughter while the father spanked the eight-month-old baby. The mother willingly gave up custody to T.F. to a couple she had met through a local shelter.

## II.  STANDARD OF REVIEW

Proceedings terminating parental rights are reviewed de novo. *See In re H.S.*, 805 N.W.2d 737, 745 (Iowa 2011). "We review the facts and law, and adjudicate once again those issues properly preserved and presented." *In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995). Weight is given to findings of fact by the juvenile court, especially concerning credibility determinations. *Id.* at 480-81. We are not bound by the lower court's findings. *Id.* at 481.

## III.  ANALYSIS

The mother argues the State has not proven by clear and convincing evidence the child could not be returned to the mother's custody at the time of the termination hearing or within a reasonable time. The court terminated the mother's parental rights pursuant to sections 232.116(1)(d), (g), (h), and (i).

While the mother challenges some of the grounds of termination, she does not challenge R.P.'s termination in regards to section 232.116(1)(g). When a court terminates parental rights on more than one ground, we may affirm the order on any of the grounds. *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). The mother's failure to challenge section 212.116(1)(g) waives any claim of error related to that ground. *See Hyler v. Garner*, 548 N.W.2d 864, 870 (Iowa 1996) ("[O]ur review is confined to those propositions relied upon by the appellant for reversal on appeal."). Therefore, we affirm the termination on statutory grounds under section 232.116(1)(g).[2]

The mother also asserts termination is not in the best interest of the child. The mother asserts the State has not proven the risk to R.P. if the child were to be placed with her, but does not elaborate on why termination is not in her child's best interest. In determining the best interests of the child, we give primary consideration to "the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional conditions and needs of the child." *See* Iowa Code § 232.116(2). The mother has not consistently shown she can maintain a safe environment for R.P. The

---

[2] The mother's argument regarding 232.116(1)(i) touches on an element of 232.116(1)(g), concerning whether additional services or time would correct the situation. The mother does not specify what additional services or skills she would require to correct the situation. We have conducted a de novo review and find the elements of section 232.116(1)(g) would have been satisfied if properly brought for review. R.P. is the mother's fourth child who has required DHS involvement, and the mother has still not been able to obtain the skills necessary for even basic parenting. The mother received services for almost a year in the course of this case. She did not take full advantage of services: she was noncompliant with her medication, did not attend therapy, and resisted testing her daughter for developmental delays against the advice of service providers. She still required significant help from DHS workers in properly parenting R.P. on visits. There is no evidence suggesting further services or time would correct the situation.

mother has not shown she can appropriately care for R.P. The mother has not consistently worked to resolve her mental health issues. She has a mild intellectual disability, bipolar disorder with psychotic features, and borderline personality disorder. The mother's other three children have been removed or are no longer in her custody, making it clear the mother is not a long-term option for R.P.

The mother was provided multiple services in this case from April 2014 until March 2015 tailored to meet her needs and showed minimal improvement. Termination and permanent placement in a foster home is the most conducive to R.P.'s long-term nurturing and growth, as well as her personal safety, and her physical and mental needs. It is, therefore, in her best interest to terminate parental rights. The order for termination and the order for a change in the permanency goal are affirmed.

## IV. CONCLUSION

We affirm termination of the mother's parental rights pursuant to Iowa Code section 232.116(1)(g). We further find termination is in the best interest of R.P.

**AFFIRMED.**