# IN THE COURT OF APPEALS OF IOWA

No. 18-0976
Filed April 17, 2019

**IN THE INTEREST OF D.C.,**
**Minor Child,**

**D.C., Minor Child,**
       Appellant.

_____

Appeal from the Iowa District Court for Jasper County, Thomas W. Mott, Judge.

D.C. appeals from the dispositional orders placing him in the custody of Juvenile Court Services for placement in residential treatment foster care. **AFFIRMED.**

Christopher A. Clausen of Clausen Law Office, Ames, for appellant.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Considered by Doyle, P.J., Mullins, J., and Scott, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**DOYLE, Presiding Judge.**

D.C. appeals from the dispositional orders placing him in the custody of Juvenile Court Services (JCS) for placement in residential treatment foster care. He argues the juvenile court erred in granting the application to modify disposition and residential treatment foster care is not the least restrictive placement. We affirm the district court.

## I.    Background Facts and Proceedings.

D.C., born in 2002, has numerous cases pending within the juvenile court system. This appeal arises from three of his nine active juvenile court cases. On July 26, 2017, D.C. was caught taking a number of food items from a Kum & Go in Colfax and was alleged to have committed the delinquent act of theft in the fifth degree, in violation of Iowa Code sections 714.1(1) and 714.2(5) (2017). D.C. was also alleged to have committed the delinquent act of theft in the fifth degree after stealing a shopping cart of groceries from Hy-Vee in Newton on July 27, 2017, while in the company of his younger sister. D.C.'s mother was present, nearby, or otherwise implicated in both cases by making improbable excuses at or shortly after each theft. On December 14, 2017, D.C. was adjudicated to have committed both delinquent acts.

On the same day as his adjudication hearing, D.C. stole a GizmoPal watch from a Verizon store in Newton and was again alleged to have committed the delinquent act of theft in the fifth degree. His mother and sister were present in the store when the act took place.

D.C. was detained from December 30, 2017, to January 11, 2018. Following a dispositional hearing, the court allowed D.C. to return to his parents'

home and placed him on probation. Among other terms, his probation included electronic monitoring. D.C. was detained again on March 4, 2018, after receiving ongoing violations related to his tracking and probation requirements, but he was allowed to return to his parents' home the next day. On March 9, 2018, D.C. pled guilty to the delinquent act of theft in the fifth degree for stealing the GizmoPal watch.

On March 26, 2018, D.C. was caught stealing a tomahawk from Mills Fleet Farm in Ankeny while his parents were present at a nearby store. D.C. fled Mills Fleet Farm with his sister. A petition alleging that D.C. committed the delinquent act of theft in the fifth degree was filed.[1] As a result of his continuous delinquent behavior, JCS requested D.C. be detained again. The request was initially granted by the juvenile court on March 27, 2018, and continued by court order on April 6, 2018. After a May 4, 2018 hearing, the court found the least restrictive placement required transfer of D.C. to a residential foster care facility. In its May 27, 2018 delinquency disposition modification and delinquency disposition order, the juvenile court ordered transfer of D.C.'s custody to JCS for placement in residential treatment foster care. D.C. appeals.

## II.    Standard of Review.

Delinquency proceedings serve as an alternative to the criminal prosecution of a child. *In re A.K.*, 825 N.W.2d 46, 49 (Iowa 2013). "We normally review delinquency proceedings in juvenile court de novo. When the issue on appeal relates to statutory discretion exercised by the juvenile court, however, we review

---

[1] This charge is not one of the three juvenile court cases D.C. addresses on this appeal; nevertheless, it is a chief reason for D.C.'s detention by JCS starting in March 2018.

the evidence de novo to determine whether the discretion was abused." *In re A.J.M.*, 847 N.W.2d 601, 604 (Iowa 2014); *In re Matzen*, 305 N.W.2d 479, 482 (Iowa 1981) (In circumstances where the legislature has built the juvenile court's discretion into the statute, "our role requires a de novo review to the extent of examining all the evidence to determine whether the court abused its discretion."). Questions of both law and fact are reviewed anew. *In re D.L.C.*, 464 N.W.2d 881, 883 (Iowa 1991). We give weight to the factual findings of the juvenile court, especially considering the credibility of witnesses, but are not bound by them. *In re N.W.E.*, 564 N.W.2d 451, 453 (Iowa Ct. App. 1997).

**Discussion.**

D.C. first argues the juvenile court erred in granting the application to modify disposition, claiming the application is "deficient on its face" because it was made by D.C.'s JCS officer. This argument was neither raised in, nor decided by, the juvenile court. Therefore, the argument is not preserved for our review. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

However, even if the argument had been preserved for our review, we conclude the application to modify was not deficient. The application was made pursuant to Iowa Code section 232.54(1)(a),[2] which states that "upon the motion

---

[2] D.C.'s argument cites section 232.54(1)(e), which applies to modifications of dispositional orders originally made pursuant to section 232.52(2)(d) (transferring legal custody of the child) and (e) (transferring custody of the child to the director of the department of human services for placement in state training school or other facility). Because the original disposition was made pursuant to section 232.52(2)(b) (placing the child on probation and releasing the child to the child's parent), the provisions of section 232.54(1)(e) are inapplicable.

of . . . a person supervising the child under a dispositional order, a county attorney, or upon its own motion, the court may terminate the order and discharge the child, modify the order, or vacate the order and substitute another order." Accordingly, there was no error in D.C.'s JCS officer requesting modification as he was "a person supervising the child under a dispositional order." Iowa Code § 232.54(1)(a).

D.C. next argues that placement in residential treatment foster care was not the least restrictive placement under the circumstances. Iowa Code section 232.52(1) states that "the court shall enter the least restrictive dispositional order appropriate in view of the seriousness of the delinquent act, the child's culpability as indicated by the circumstances of the particular case, the age of the child, [or] the child's prior record." In its May 27, 2018 order, the juvenile court stated:

> The court considers the record of services, [D.C.'s] social history information, the outcome on his Iowa delinquency assessment that indicates high risk of delinquent behavior, his continual noncompliance with Juvenile Court Services, repeated law violations, lack of positive parental influence, and recommendation by the Juvenile Court Officer in concluding that [D.C.'s] best interests require transfer of custody for residential treatment foster care.
> . . . .
> [D.C.'s] age, prior record, nature of the instances of theft in a variety of retail situations, his culpability, family involvement, prior services, and failure to respond in a beneficial or positive manner to services, by clear and convincing evidence require placement now in residential treatment foster care as the least restrictive placement appropriate under the circumstances.

On de novo review, we conclude the juvenile court did not abuse its discretion in requiring D.C. to remain in the custody of JCS and ordering his placement in a residential treatment foster care. *See id.* § 232.52(2) (setting forth the dispositional orders that the court "may" enter); *State v. Machovec*, 17 N.W.2d

843, 846 (Iowa 1945) (stating that "[a]s a general rule, the word 'may' when used in a statute is permissive only and operates to confer discretion"); *cf. Matzen*, 305 N.W.2d at 482 (reviewing decision to suspend proceedings for an abuse of discretion because legislature's use of the term "may" indicated it had built the juvenile court's discretion into the statute). D.C. has a long history with JCS. His first delinquent act of theft occurred in 2015, at the age of thirteen, and included items valuing over $1000, making it a theft in the second degree under Iowa Code section 714.2(2) (2015). Since then, D.C. has been alleged to have committed delinquent acts of theft ranging from theft in the fifth degree to theft in the second degree on nine other occasions. A majority of D.C.'s delinquent acts include participation or complicity by members of his immediate family, primarily his younger sister and mother.

D.C. has received a number of services designed to curb his delinquent behavior, including detention, shelter, electronic monitoring, tracking and monitoring, and functional family therapy. Many of these services have been used multiple times, and he has failed to complete most of them. A predisposition report written by D.C.'s JCS officer states that he "minimizes, denies, justifies, excuses, or blames others" for his conduct and he reportedly experiences "no empathy" for the victims of his criminal behavior. At the modification hearing, D.C. provided two alternative options to the juvenile court: placement back at his parents' home or placement with his paternal aunt. In its May 27, 2018 order, the court responded by stating that:

> [D.C.] needs placement at distance from his parents and sister, with whom he has been involved in illegal, antisocial behaviors that led him to repeated court processes. While [his] aunt and her husband

have not been implicated in such, they as working people with their own children, jobs, and other duties in Marshalltown, lack specialized means and skills to deal with the emergent situation that [D.C.] presents for delinquency disposition now.

Taking into account all of the aforementioned factors, we agree with the juvenile court that D.C.'s placement in residential treatment foster care was the least restrictive placement under the circumstances.

We conclude, under the circumstances of this case, the dispositional orders placing D.C. in the custody of JCS for placement in residential treatment foster care were proper and the least restrictive alternative. Therefore, we affirm the juvenile court.

**AFFIRMED.**