STATE of Iowa, Appellee,

v.

John Lee HARRIS, Appellant.

No. 96–2296.

Supreme Court of Iowa.

Feb. 17, 1999.

Michael J. Burdette of Cook, Gotsdiner, McEnroe & McCarthy, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Thomas S. Tauber, Assistant Attorney General, John P. Sarcone, County Attorney, and Jeffrey Noble and Jamie Bowers, Assistant County Attorneys, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, SNELL, and TERNUS, JJ.

CARTER, Justice.

The appellant, John Lee Harris, was convicted of first-degree murder following a jury trial. He has assigned several grounds for reversal. The court of appeals affirmed his conviction. So do we.

The evidence viewed most favorably toward the State discloses the following facts. The victim of the shooting was Monty Williams. His cousin, Tony Williams, had threatened a thirteen-year-old boy named Scooter Palmer with harm. The boy had friends, including DeMarco Walker, Eric McCuller, Nelson Jones, Kenneth Hayes, and defendant. This group planned to retaliate against Tony Williams for his threats against Scooter. They, along with Scooter, went in Hayes' car to Scooter's house where defendant took possession of a .22 caliber handgun belonging to him. At this point, defendant told the group that "Tony was going to get dealt with." The group proceeded on in

Hayes' car and stopped at another house where McCuller retrieved a .380 caliber handgun.

While cruising around in Hayes' car looking for Tony Williams, the group encountered the victim, Monty Williams. They inquired through the car window concerning Tony's whereabouts. Monty told the group that Tony was at home. Hayes then drove away, but defendant asked him to return to the location where Monty was standing because defendant did not believe that Monty could be trusted. Hayes then turned the car around and returned to the area where Monty was still standing in the street. Defendant exited the car and shot Monty to death. Apparently, the group never did locate Tony Williams, who was a witness for the State at defendant's trial.

Pursuant to a plea agreement, Hayes pleaded guilty to going armed with intent. At defendant's trial, Hayes, Walker, and Palmer all testified that defendant had killed Monty Williams. The State conceded that, based on his guilty plea, Hayes was an accomplice as a matter of law. The State disputed defendant's contention that Walker and Palmer were accomplices to the murder of Monty Williams. Defendant was convicted by a general verdict of guilty. Other facts and circumstances that are significant in deciding the appeal will be considered in our discussion of the legal issues that have been presented.

Defendant's arguments for reversal relate to the following: (1) the district court's refusal to instruct the jury that Walker and Palmer were accomplices as a matter of law; (2) the court's refusal to submit special interrogatories to the jury concerning the status of Walker and Palmer as accomplices; (3) allowing evidence concerning a photograph showing defendant in the possession of several firearms; (4) not suppressing an uncounseled statement taken from defendant, who was a juvenile, prior to the time that either of his parents had been contacted; and (5) sufficiency of the evidence to support the conviction. We consider each of these contentions.

## I. *Whether the Trial Court Should Have Instructed the Jury That Walker and Palmer Were Accomplices as a Matter of Law.*

Defendant argues that the positive participation of State witnesses Palmer and Walker, in obtaining weapons and planning the shooting of Tony Williams, establishes that they were accomplices as a matter of law in the shooting of Monty Williams. His request that the court so instruct the jury was denied.

In order for a witness to be considered an accomplice, the evidence must establish that the witness's conduct was sufficient that that person could be charged with and convicted of the specific offense for which the accused was on trial. *State v. McDaniel,* 512 N.W.2d 305, 308 (Iowa 1994); *State v. Berney,* 378 N.W.2d 915, 917 (Iowa 1985); *State v. Johnson,* 318 N.W.2d 417, 440 (Iowa 1982). Only if the facts are not disputed and not susceptible of different inferences may the question of whether a witness is an accomplice be determined as a matter of law. *McDaniel,* 512 N.W.2d at 308. If the facts are susceptible to different inferences, the question is one of fact for the jury. *Id.*

There was no evidence that either Walker or Palmer in any way assisted or encouraged defendant in the shooting of Monty Williams. If the facts were resolved in a particular manner, the evidence relating to Walker's and Palmer's encouragement of harm to Tony Williams could render them criminally liable for the harm to Monty Williams based on Iowa Code section 703.2 (1995), our joint criminal conduct statute. We are unable to conclude, however, that the criminality of these witnesses was established on this theory as a matter of law. Among other things that would have to be established for a finding that Walker and Palmer were accomplices on a theory of joint criminal conduct, was that the crime of killing Monty was in some manner in furtherance of the offense that Walker and Palmer were bent on committing, *i.e.,* the harming of Tony. *See State v. Hohle,* 510 N.W.2d 847, 848 (Iowa 1994). That is an issue on which the jurors might have disagreed based on the evidence presented. The district court cor-

rectly refused to instruct the jury that Walker and Palmer were accomplices as a matter of law.

## II. *Whether the Trial Court Erred in Not Submitting Defendant's Requested Interrogatories Inquiring as to Whether Walker and Palmer Were Accomplices.*

■ At trial defendant requested that the trial court submit interrogatories to the jury inquiring whether Walker and Palmer were accomplices. The court denied this request, indicating that the answers to those questions would inhere in the verdict. Iowa Rule of Criminal Procedure 21(2) provides:

[The jury] must also return with the general verdict answers to special interrogatories submitted by the court upon its own motion, or at the request of the defendant in prosecutions where the defense is an affirmative one, or it is claimed any witness is an accomplice, or there has been a failure to corroborate where corroboration is required.

Defendant contends that this rule mandates that a trial court submit interrogatories to the jury if the conditions of the rule are met, *i.e.*, if there is an issue of whether certain persons are accomplices and whether corroboration of their testimony is required. The State claims that rule 21(2) only requires that, if the conditions of the rule are met, the jurors must answer those interrogatories that the court elects to submit. It urges that whether an interrogatory will be submitted is a matter within the trial court's discretion. We agree with the State's interpretation. There is no language in the rule mandating the submission of interrogatories in all instances in which the conditions described in the rule exist.

■ We are also convinced that defendant is unable to establish any prejudice based on the court's failure to submit the requested interrogatories. The jury was properly instructed concerning the requirement in Iowa Rule of Criminal Procedure 20(3) that guilt may not be based on the testimony of an accomplice unless there is other evidence corroborating the accused's participation in the crime charged. It was further instructed

that the testimony of one accomplice is not sufficient to corroborate the testimony of other accomplices. There is no reason to believe that the requested interrogatories, if given, would have altered the jury's determination of whether Walker and Palmer were accomplices or, if so, whether their testimony was adequately corroborated.

■ The only benefit that might have arisen from the submission of the requested interrogatories would be a potential for narrowing the issues on appeal concerning the corroboration of the testimony of these witnesses if they were found not to have been accomplices. We are convinced that the record allows an adequate review of those issues in the absence of the requested interrogatories. We may affirm a conviction based on the testimony of an alleged accomplice in the absence of corroboration if a properly instructed jury might have found from the evidence that the witness was not an accomplice. *State v. Sallis,* 238 N.W.2d 799, 802 (Iowa 1976). We conclude that defendant's conviction in the present case can be affirmed on this basis.

■ We are also convinced that, even if both Palmer and Walker are viewed as accomplices, there was sufficient evidence corroborating defendant's guilt to uphold the verdict. The witness Lacresha Harris testified that she had observed the position in which defendant was seated in Hayes' automobile when the occupants began to cruise in search of Tony Williams. She testified that defendant was seated at the window in the backseat opposite the driver's side of the car. She also testified that a short time later she observed from a distance that a person exited the vehicle from that position and shot Monty Williams. We may also consider as corroborating evidence the fact that when defendant was interrogated by the police he gave false and misleading evidence concerning his whereabouts. *See State v. Taylor,* 557 N.W.2d 523, 528 (Iowa 1996) (defendant's assertion of implausible story implicates him in crime and constitutes corroborative evidence).

## III. Whether the District Court Erred in Admitting Testimony Concerning a Photograph Showing the Defendant in Possession of Firearms.

Over defendant's objection at trial, the State was allowed to introduce testimony of a police officer that a photograph of the defendant taken approximately seven weeks prior to the alleged murder showed him to be in possession of a Smith & Wesson model 422 pistol. None of the witnesses testified concerning other firearms that were shown to be in defendant's possession in the photograph, and the photograph was never shown to the jury. Evidence of experiments conducted by Department of Criminal Investigation lab technicians revealed that rifling characteristics produced by the Smith & Wesson model 422 were similar to the rifling found on a .22 caliber bullet recovered from Monty Williams' body. The district court instructed the jury that the testimony about the photograph was only to be considered with respect to whether defendant had access to a .22 caliber handgun.

Defendant urges that the foundation laid for the testimony was insufficient to show that the gun in the photograph was in any way connected to the crime and that the evidence depicted in the photo was remote. The test of relevancy is whether the evidence offered would render the desired inference more probable than it would be without such evidence. *State v. Knox*, 536 N.W.2d 735, 738 (Iowa 1995). District courts enjoy a rather broad discretion in determining issues of relevancy. *Id.* Remoteness only renders evidence irrelevant if the elapsed time is so great as to negative any rational or logical connection between the facts sought to be proved and the evidence offered. *State v. Zeliadt*, 541 N.W.2d 558, 561 (Iowa App. 1995). It would not be an unwarranted assumption to believe that a handgun possessed by defendant seven months before the killing would still be available to him at the time of the crime.

In evaluating the trial court's decision to allow the testimony derived from viewing the photograph, we are mindful that this was a case in which there was a very close question as to the need for corroboration of accomplice testimony. It was the testimony of the alleged accomplices that defendant had used a gun of this general description. The bullets retrieved from the murder victim were from a gun of this general description. We believe that the testimony was properly allowed as corroborative evidence of the accomplices' testimony.

## IV. Whether Defendant's Uncounseled Statement to Police Was Admissible When Waiver of Counsel Was Obtained Prior to Contacting Defendant's Parents.

Defendant claims that Iowa Code section 232.11(2) (1995) required the police to make a good-faith effort to contact his parents before obtaining a waiver of his right to counsel as a condition of interrogating him. He urges that they failed to do so and that his uncounseled statements thereafter obtained should not have been admitted into evidence. That statute reads as follows:

> The waiver by a child who is at least sixteen years of age is valid only if a good faith effort has been made to notify the child's parent, guardian, or custodian that the child has been taken into custody and of the alleged delinquent act for which the child has been taken into custody, the location of the child, and the right of the parent, guardian, or custodian to visit and confer with the child.

Iowa Code § 232.11(2). Defendant was seventeen years of age.

By the time the officers investigating the murder located defendant, he had been identified as the killer by two witnesses. Detectives learned that there was an existing warrant for his detention based on an alleged violation of his youthful-offender status on a theft charge. A detective told defendant that he was being taken into custody on the other warrant, but also told him that he was a suspect in the murder of Monty Williams. When detectives and defendant arrived at the police station, he was asked how his mother could be contacted. He advised them that he did not know where his mother lived but that he did have her telephone number. Detectives took that number from defendant,

dialed it, and reached a voice mail machine. The detective left a message on that machine, identified himself as a police officer, stated that defendant was in custody at the police station, and requested that defendant's mother call the police station as soon as she received the message.

Detectives then told defendant that they had been unable to contact his mother and inquired as to his father's whereabouts. Defendant responded that he did not know where his father lived but again gave them a telephone number. That number turned out to be the number for defendant's father's pager. Detectives called the pager number and entered their police station telephone number into the pager. At about this time, detectives contacted an assistant county attorney who worked in the youth division for advice on how to proceed. They were told to wait one-half hour for a response from either or both of defendant's parents. They were told that if no response was received in that time they could proceed to take a waiver from defendant.

After waiting the half hour and receiving no response, a detective informed defendant of his right to remain silent and his right to counsel. Defendant asked what the interview would be about. The detectives responded that he had been identified as the person who shot Monty Williams and that that was what they wished to discuss. Thereupon, defendant signed the waiver form and was interrogated by police detectives.

■ The State argues that defendant's argument based on the parental notice requirements of section 232.11(2) are misplaced because forcible felony claims are initially excluded from the jurisdiction of the juvenile court by section 232.8(1)(c). This, of course, would only be true if we view defendant's detention as being based on a warrantless arrest for the murder of Monty Williams. In viewing the various statutes on which defendant's alleged right to counsel might be based, we note at the outset that, under section 232.11, the right to counsel for a suspect subject to the jurisdiction of the juvenile court does not arise for delinquent acts less serious than serious misdemeanors. It

does not appear whether the violation of the conditions imposed under the youthful-offender program rose to the status of a serious misdemeanor. If it did not, defendant had no right to counsel under the statute on which he relies.

If the violation of youthful-offender-program conditions did rise to serious misdemeanor status, then the statute relied on by defendant does apply. In reviewing the conduct of the officers, however, we are satisfied that, even if the statute does apply, they did make a good-faith effort to contact defendant's parents, and thus, defendant's waiver of counsel was not invalid on the ground that they had failed to make such an effort. Finally, if defendant's detention is viewed as being based on a warrantless arrest for the murder of Monty Williams, then the State is correct in noting that the statutory waiver-of-counsel restrictions relied on by defendant are inapplicable because murder is excluded from the jurisdiction of the juvenile court by section 232.8(1)(c). Viewing all of the possible scenarios, we conclude that the district court did not err in overruling defendant's motion to suppress his statement to the detectives.

### V. *Sufficiency of Evidence.*

■ Defendant's contention that the evidence was insufficient to support his conviction is based on assumptions concerning the status of the alleged accomplices to the crime that have been rejected in Division II of this opinion. Based on our determinations concerning the alleged accomplices, there was ample evidence to support the conviction. Any suggestion by defendant that his conviction was the result of ineffective assistance of trial counsel is a matter not susceptible of determination on the existing trial record. Such claims, if they exist, must be asserted by application for postconviction relief. We have considered all issues presented and conclude that the judgment of the district court should be affirmed.

**DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**

All justices concur except TERNUS and SNELL, JJ., who concur specially.

TERNUS, Justice (concurring specially).

I concur specially to state my disagreement with the majority's interpretation of Iowa Rule of Criminal Procedure 21(2). I think this rule requires the court to submit a special interrogatory requested by the defendant when the interrogatory is directed to whether a witness is an accomplice. In pertinent part the rule provides that the jury "must ... return answers to special interrogatories submitted by the court ... at the request of the defendant in prosecutions where ... it is claimed any witness is an accomplice...." The majority interprets this rule to simply mean that the jury must answer special interrogatories that the court, *in its discretion*, chooses to submit. But if that is true, what is the purpose of including in the rule the specific categories of interrogatories to which the rule is applicable? Do these categories merely describe the interrogatories that the jury "must" answer? If the court submits a special interrogatory requested by the defendant on an issue not encompassed within these categories, does the jury have the discretion to refuse to answer the interrogatory?

I think a more sensible interpretation of the rule starts with the premise that the jury must answer any interrogatory submitted to it by the court. Rule 21(2) was surely not intended to merely restate this basic proposition. Rather, rule 21(2) specifies those categories of interrogatories that the court must submit at the request of the defendant. I readily concede the rule could have been more artfully drafted. But if the jury *must* answer interrogatories requested by the defendant on these issues, as the rule clearly states, then it follows that the court *must* submit such interrogatories when requested in order to give the jury the opportunity to answer them. I would hold the trial court erred in refusing to give the defendant's requested interrogatory on whether Walker and Palmer were accomplices.

SNELL, J., joins this special concurrence.