## IN THE COURT OF APPEALS OF IOWA

No. 14-2098
Filed June 15, 2016

**STATE OF IOWA,**
         Plaintiff-Appellee,

**vs.**

**ELDRA SCOTT JENNINGS JR.,**
         Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Johnson County, Paul D. Miller,

Judge (Count I), and Deborah Farmer Minot, District Associate Judge (Count II).


        Defendant appeals his convictions for intimidation with a dangerous

weapon and carrying weapons.  **AFFIRMED.**


        Mark C. Smith, State Appellate Defender, and Theresa R. Wilson,

Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Linda J. Hines, Assistant Attorney

General, for appellee.


        Heard by Vogel, P.J., and Doyle and Bower, JJ.

**BOWER, Judge.**

Defendant Eldra Jennings Jr. appeals his convictions for intimidation with a dangerous weapon and carrying weapons. We conclude the district court properly denied the motion to suppress Jennings's statements made during the interview at the police station. We determine there is substantial evidence in the record to support Jennings's conviction for intimidation with a dangerous weapon with the intent to injure or provoke fear or anger in another. We deny Jennings's claims of ineffective assistance of counsel. We affirm his convictions.

## I.     Background Facts & Proceedings

On July 27, 2014, at about 1:30 a.m., Iowa City police officers heard three or four gunshots at the pedestrian mall in downtown Iowa City. Michael Dillon, who operated a food vending cart, saw a man fire a weapon into the air and then run from the scene. Diane Dillon, who was also working at the food vending cart, crouched down when she heard the shots. Diane stated there were about 200 people in the pedestrian mall. She testified, "People hit the ground. They either crouched or they got down on the ground." Diane was worried about shots hitting the propane tanks used for the vending cart.

Officer Benjamin Hektoen, who was on foot patrol at the pedestrian mall, described the scene:

> There were hundreds of people running towards me, you know, away from the source of the gunshots. Many of these people were cowering. There was screaming going on. People were ducked behind trees or garden planters. There was a large number of people that were running back into the bars, in what I discerned as an attempt to get away from the gunshots.

Officer Hektoen also stated people "appeared very fearful to me. They were running. They were screaming. They had their hands over their head. Their necks were scrunched down. Their shoulders were up by their ears. They were just kind of in a panic."

When officers arrived at the scene of the shooting, Michael Dillon described the shooter and indicated the direction he went, and the officers ran in pursuit. Jennings, who matched the description of the shooter, was stopped by officers and told to get on the ground. Jennings told the officers he had a gun. Officers retrieved a 9 mm handgun from his waistband. Jennings was informed of his *Miranda* rights and taken to the police station. Officers found shell casings matching Jennings's gun at the pedestrian mall.

Jennings was interviewed by Officer Jeremy Bossard at the police station. Jennings informed Officer Bossard he was seventeen years old.[1] There is no evidence any of the officers attempted to contact a parent or guardian for Jennings. During the videotaped interview, Jennings stated he had a gun and he shot it on the pedestrian mall. Jennings stated he was with a group of people and a verbal argument broke out with another group of people. He stated he believed the argument was going to turn physical so he pulled out his gun and fired three shots into the air.

A petition was filed alleging Jennings committed the delinquent acts of intimidation with a dangerous weapon, carrying weapons, going armed with

---

[1] At the time of the incident in July 2014, it was less than one month before Jennings's eighteenth birthday.

intent, and reckless use of a firearm. The juvenile court entered an order waiving jurisdiction to district court, pursuant to Iowa Code section 232.45 (2013).

The State filed a trial information charging Jennings with intimidation with a dangerous weapon with intent, carrying weapons, and going armed with intent. Jennings filed a motion to suppress claiming: (1) he did not voluntarily waive his *Miranda* rights at the time of the interview; (2) he was interrogated while in custody without validly waiving his right to counsel, in violation of section 232.11; and (3) his statement he had a gun, while being held down on the pavement at gunpoint, was involuntary.

After a hearing, the district court found Jennings voluntarily waived his *Miranda* rights. The court found the offense of intimidation with a dangerous weapon with intent to injure or provoke fear or anger in another, in violation of section 708.6, was a forcible felony and a juvenile's right to counsel under section 232.11 did not apply to a juvenile charged with a forcible felony. The court determined, however, the right to counsel under section 232.11 applied to the other two charges, carrying weapons and going armed with intent, which were not forcible felonies. The court concluded Jennings's statements during the interview should be suppressed for the offenses of carrying weapons and going armed with intent, and the trial on those charges must be severed from the trial on the charge of intimidation with a dangerous weapon with intent. The court also determined Jennings voluntarily stated, "I have a gun," or words to that effect at the time he was stopped and the statement was admissible at trial.

The State voluntarily dismissed the charge of going armed with intent. A jury trial was held on the charge of intimidation with a dangerous weapon with

intent. The charge of carrying weapons was tried to the court based on the minutes of testimony. Jennings was found guilty of both offenses. Jennings was sentenced to a term of imprisonment not to exceed ten years on the charge of intimidation with a dangerous weapon with intent. The court suspended the sentence and placed Jennings on probation for five years. On the charge of carrying weapons, Jennings was sentenced to 139 days in jail and given credit for the 139 days he had already served. Jennings now appeals his convictions.

## II.     Waiver of *Miranda* Rights

Jennings claims the district court should have granted his motion to suppress because he did not voluntarily and intelligently waive his *Miranda* rights during the custodial interrogation at the police station. He points out he was a juvenile. Jennings claims there is no evidence in the record to show he adequately understood the rights he was giving up.

"Our review of the record on the voluntariness of a confession is de novo, and we make our own evaluation of the circumstances." *State v. Hajtic*, 724 N.W.2d 449, 453 (Iowa 2006). The State bears the burden of proving a defendant's waiver of *Miranda* rights was voluntary, knowing, and intelligent. *Id*.

A defendant subjected to custodial interrogation must be informed of his rights under the Fifth and Fourteenth Amendments. *State v. Ortiz*, 766 N.W.2d 244, 251 (Iowa 2009) (citing *Miranda v. Arizona*, 384 U.S. 436, 479 (1966)). Statements made during custodial interrogation are inadmissible unless the defendant was specifically informed of his *Miranda* rights and there was a valid waiver of those rights. *State v. Palmer*, 791 N.W.2d 840, 844–45 (Iowa 2010). A

waiver of *Miranda* rights must be made voluntarily, knowingly, and intelligently. *State v. Tyler*, 867 N.W.2d 136, 174 (Iowa 2015).

"First, for a suspect to knowingly and intelligently waive his *Miranda* rights, the State must prove by a preponderance of the evidence that the waiver was made 'with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *Palmer*, 791 N.W.2d at 845 (citation omitted). "Second, for a waiver to be made voluntarily, the State must prove by a preponderance of the evidence that the relinquishment of the right was 'the product of a free and deliberate choice rather than intimidation, coercion, or deception.'" *Id.* (citation omitted).

"Courts use an objective standard to determine whether a defendant's waiver is voluntary, knowing, and intelligent." *Hajtic*, 724 N.W.2d at 453. A court may consider a defendant's age, prior experience in the criminal justice system, mental condition, ability to understand questions, and physical and emotional reaction to interrogation, as well as whether deception or physical punishment were used, and the length of the interrogation. *Tyler*, 867 N.W.2d at 175.

Officer Bossard testified he informed Jennings of his *Miranda* rights. Officer Bossard then interviewed Jennings for about forty to forty-five minutes at the police station. Jennings did not seem confused about what had happened or the process. He did not show any signs of physical or mental impairment. Jennings offered statements about his history in the juvenile court system. We note Jennings was less than one month from turning eighteen years old. *See Hajtic*, 724 N.W.2d at 456 (finding defendant, who had validly waived his *Miranda*

rights, "lacked only one month of being eighteen"). There is no evidence Jennings was subjected to intimidation, coercion, or deception.

A defendant's waiver of *Miranda* rights need not be express. *State v. Mann*, 512 N.W.2d 528, 534 (Iowa 1994). A defendant's voluntary decision to talk to an officer "may clearly be implied from the fact that he did so after being advised that he was not required to." *Id.*; *see also State v. Thai*, 575 N.W.2d 521, 524 (Iowa Ct. App. 1997). Here, Jennings was informed of his *Miranda* rights and he answered the officer's questions, showing he waived his *Miranda* rights. Looking at the totality of the circumstances, we determine Jennings voluntarily, knowingly, and intelligently waived his *Miranda* rights. We conclude the district court properly denied the motion to suppress his statements made during the interview at the police station.

### III.    Sufficiency of the Evidence

Jennings claims there is not sufficient evidence in the record to support his conviction for intimidation with a dangerous weapon with intent to injure or provoke fear or anger in another and the district court should have granted his motion for judgment of acquittal. Jennings states he did not shoot his gun into the assembly of people, but rather, fired into the air. He also states there is insufficient evidence to show he threatened to shoot his gun within an assembly of people.

We review a district court ruling on a motion challenging the sufficiency of the evidence for the correction of errors of law. *State v. Showens*, 845 N.W.2d 436, 439 (Iowa 2014). The Iowa Supreme Court has stated:

> In reviewing challenges to the sufficiency of the evidence supporting a guilty verdict, courts consider all of the record evidence viewed in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence. We will uphold a verdict if substantial record evidence supports it.

*Id.* at 439–40 (citation omitted).

Under section 708.6 the offense of intimidation with a dangerous weapon with intent, a class "C" felony, is committed when a person "shoots . . . or discharges a dangerous weapon . . . within an assembly of people, and thereby places the occupants or people in reasonable apprehension of serious injury or threatens to commit such an act under circumstances raising a reasonable expectation that the threat will be carried out." There are two alternatives in the statute—shooting or discharging a dangerous weapon within an assembly of people, or threatening to shoot or discharge a dangerous weapon within an assembly of people. Section 708.6 criminalizes an assault calculated to imperil the safety of people in an assembly. *State v. Ross*, 845 N.W.2d 692, 699 (Iowa 2014).

In the case of *State v. Bush*, 518 N.W.2d 778, 779 (Iowa 1994), there was evidence the defendant shot straight into the air but also evidence he shot at some of the guests at a party, where about twenty to thirty people were present. The court found the definition of the phrase, "within an assembly of people," meant "into or through two or more persons at the same place." *Bush*, 518 N.W.2d at 780. The court noted the defendant "was not isolated nor off by himself," but "was within a ring of people when he fired the shots and that these people were within range of the handgun." *Id.* The court concluded a jury could

also reasonably find the defendant "fired the shots *through* this ring of people, thereby subjecting them to the obvious risk of severe injury or even death." *Id.* The court concluded, "the jury could easily infer that [the defendant] fired his gun 'within an assembly of people.'" *Id.*

Another case on this issue is *In re N.W.E.*, 564 N.W.2d 451, 453 (Iowa Ct. App. 1997), where, believing a physical confrontation was about to take place, a juvenile "pulled out a handgun and fired one round into the air at a forty-five degree angle." There were four people in front of him and two on each side of him. *N.W.E.*, 564 N.W.2d at 454. Similar to the present case, the juvenile argued "he did not fire the gun 'into or through two or more persons at the same place.'" *See id.* (citing *Bush*, 518 N.W.2d at 780). We stated, "We think that is too narrow of a reading of *Bush*." *Id.* We concluded the evidence supported a finding the juvenile fired the gun "within an assembly of people." *Id.*; *see also, e.g.*, *State v. Anderson*, No. 14-0423, 2015 WL 799788, at *4 (Iowa Ct. App. Feb. 25, 2015) (finding sufficient evidence defendant committed intimidation with a dangerous weapon with intent when he threatened to shoot a dangerous weapon at a group of people outside a house).

We find there is substantial evidence in the record to show Jennings shot or discharged a dangerous weapon within an assembly of people placing them in reasonable apprehension of serious injury. *See* Iowa Code § 708.6; *N.W.E.*, 564 N.W.2d at 454. As in *N.W.E.*, Jennings was surrounded by other people in the crowded pedestrian mall when he shot into the air. The evidence from Diane Dillon and Officer Hektoen shows the people present in the pedestrian mall at the time Jennings fired the shots had a reasonable apprehension of serious injury.

*See Ross*, 845 N.W.2d at 701 (finding the State must prove that by discharging a firearm the defendant placed at least two people in an assembly in reasonable fear). There was evidence some people hit the ground, some people crouched down, and some people ran. There was evidence people were fearful, screaming, and "in a panic." The State points out a bullet shot into the air may still be dangerous. *See In re C.D.G.*, 632 S.E.2d 450, 451 (Ga. Ct. App. 2006) (stating a juvenile fired shots into the air with a gun and a person fleeing the area "was struck in the head by a bullet and was killed").

We also find there is substantial evidence in the record to show Jennings threatened to shoot or discharge a dangerous weapon within an assembly of people. Jennings stated an argument with another group of people was going to turn physical so he pulled out his gun and fired three shots into the air. Thus, the purpose of shooting the gun was to give a warning to the other group of people and to place them in fear. By shooting the weapon into the air he raised a reasonable expectation the threat of shooting within the assembly of people would be carried out.

We determine there is substantial evidence in the record to support Jennings's conviction for intimidation with a dangerous weapon with the intent to injure or provoke fear or anger in another.

### IV. Ineffective Assistance

**A.** On his claim he did not voluntarily waive his *Miranda* rights, Jennings requests the imposition of guidelines for the custodial interrogation of juveniles. He suggests the following requirements: (1) the presence of an attorney; (2) electronic recording of the interrogation; (3) *Miranda* warnings given

in language appropriate to the suspect's age; and (4) the adoption of a fifteen-factor test found in *State v. Benoit*, 490 A.2d 295, 301–02 (N.H. 1985). The district court did not rule on Jennings's requests, and therefore, the issue has not been preserved for our review. *See State v. Jefferson*, 574 N.W.2d 268, 278 (Iowa 1997) (noting issues must be presented to and passed upon by the district court before they can be raised and decided on appeal).

Jennings alternatively claims if error was not preserved for any reason on this issue, it was due to ineffective assistance of counsel. We review claims of ineffective assistance of counsel de novo. *Ennenga v. State*, 812 N.W.2d 696, 701 (Iowa 2012). To establish a claim of ineffective assistance of counsel, a defendant must show (1) the attorney failed to perform an essential duty, and (2) prejudice resulted to the extent it denied the defendant a fair trial. *State v. Carroll*, 767 N.W.2d 638, 641 (Iowa 2009). A defendant has the burden to show ineffective assistance of counsel by a preponderance of the evidence. *State v. Cromer*, 765 N.W.2d 1, 7 (Iowa 2009).

We note section 232.45(11)(a) provides specific rules concerning statements of a juvenile after being taken into custody and prior to intake when the juvenile has been waived to district court.[2] The statute lists specific factors to consider in determining whether the juvenile's statements were voluntary. Iowa Code § 232.45(11)(a)(1)–(8).[3] The factors found in section 232.45(11)(a) are

---

[2] The application of the statutory guidelines found in section 232.45(11)(a) was not raised before the district court.

[3] These factors are: (1) the opportunity of the child to consult with a parent, attorney, or other adult; (2) the child's age; (3) the child's level of education; (4) the child's level of intelligence; (5) whether the child was advised of the child's constitutional rights; (6) the length of time the child was held before the statement was made; (7) the nature of the

similar to those employed by the district court in determining Jennings's statements were voluntary, and therefore, Jennings has not shown the result of the proceeding would have been different if the court had applied the specific factors found in section 232.45(11)(a). Additionally, Jennings has not shown that if counsel had advocated for the adoption of guidelines different than the statutory guidelines found in section 232.45(11)(a), those guidelines would have been adopted, they would have resulted in the suppression of Jennings's statements to officers, and the result of the proceeding would have been different. We conclude Jennings has failed to show he received ineffective assistance of counsel on this ground.

**B.** Jennings also claims he received ineffective assistance because defense counsel did not challenge the exclusion for forcible felonies in the application of section 232.11 as a violation of equal protection. Section 232.11 provides for the assistance of counsel for juveniles alleged to have committed a delinquent act. Violations by a child age sixteen or older, which constitute a forcible felony, are excluded from the jurisdiction of the juvenile court. Iowa Code § 232.8(1)(c); *State v. Mann*, 602 N.W.2d 785, 791 (Iowa 1999). Thus, the waiver-of-counsel restrictions found in section 232.11 are inapplicable to the prosecution of forcible felonies because these offenses are excluded from the jurisdiction of the juvenile court by section 232.8(1)(c). *State v. Harris*, 589 N.W.2d 239, 244 (Iowa 1999).

---

questioning; and (8) whether physical punishment, such as deprivation from sleep or food, was used.

Jennings claims this distinction for the prosecution of juveniles alleged to have committed forcible felonies violates equal protection because "[t]here is no rational basis for treating similarly situated juvenile offenders differently in the provision of rights designed to offset the coercive effect of custodial interrogations."

The Iowa Supreme Court addressed an equal protection challenge to section 232.8(1)(c) on the ground that for juveniles who committed a forcible felony, the statute treated those juveniles who were over sixteen years of age differently than it treated those at least fourteen but less than sixteen. *Mann*, 602 N.W.2d at 792. The court stated, "Moreover, section 232.8(1)(c) operates equally upon all persons similarly situated: juveniles sixteen and over who commit forcible felonies." *Id.* at 793–94. The court concluded, "Because the classification made by section 232.8(1)(c) is reasonable and operates equally upon all juveniles falling within the class, it does not violate the Equal Protection Clause." *Id.* at 794. The Iowa Supreme Court has already determined section 232.8(1)(c) treats similarly situated juveniles, those who are over the age of sixteen and who commit forcible felonies, the same. *See id.*; *McQuistion v. City of Clinton*, 872 N.W.2d 817, 830 (Iowa 2015) ("[E]qual protection demands that laws treat alike all people who are 'similarly situated with respect to the legitimate purposes of the law.'" (citation omitted)).

Additionally, there is a rational basis for treating those juveniles who commit a forcible felony differently than those juveniles who commit lesser crimes. *See King v. State*, 818 N.W.2d 1, 25 (Iowa 2012) ("Unless a suspect class or a fundamental right is at issue, equal protection claims are reviewed

under the rational basis test."). In discussing section 232.8(1)(c), the Iowa Supreme Court stated, "Having placed certain designated crimes committed by juveniles who have reached the age of sixteen within the criminal court jurisdiction, the legislature presumably thought the need for adult discipline and legal restraint was necessary in these cases." *State v. Terry*, 569 N.W.2d 364, 367 (Iowa 1997).

We determine Jennings has not shown he received ineffective assistance due to defense counsel's failure to challenge section 232.8(1)(c) on equal protection grounds. "Counsel, of course, does not provide ineffective assistance if the underlying claim is meritless." *State v. Halverson*, 857 N.W.2d 632, 635 (Iowa 2015).

We affirm Jennings's convictions.

**AFFIRMED.**