# IN THE COURT OF APPEALS OF IOWA

No. 18-1988
Filed April 15, 2020

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**DIJONIS BURKETT BROWN,**
      Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Kellyann M. Lekar, Judge.

A defendant appeals his conviction for first-degree robbery. **CONVICTION AFFIRMED; SENTENCE VACATED IN PART AND REMANDED.**

Martha J. Lucey, State Appellate Defender, and Bradley M. Bender, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Genevieve Reinkoester, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., Schumacher, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**BLANE, Senior Judge.**

Dijonis Brown appeals his conviction following jury trial of first-degree robbery, a class "B" felony, in violation of Iowa Code sections 711.1 and .2 (2017).[1] He raises several ineffective-assistance-of-counsel claims and challenges an evidentiary ruling. Finding no grounds for reversal, we affirm the conviction.

But, Brown also asks the court to remand his case to the district court so he may claim the benefit of a newly-enacted ameliorative sentencing statute applicable to first-degree robbery convictions and the mandatory minimum sentence. Finding Brown is entitled to application of the ameliorative statute, we remand for resentencing.[2]

## I. FACTS AND PRIOR PROCEEDINGS

At trial, the State presented the testimony of Brown's girlfriend at the time of the robbery, Ladajia Greer, and her acquaintance, Mohammad Souri. Souri owned a car dealership and also had a side business selling unlocked cell phones. He established a supply line from Greer—she obtained unlocked phones[3] and sold

---

[1] Brown's notice of appeal jointly appeals three criminal cases: FECR222183, the first-degree robbery conviction, along with FECR220473 and FECR221049, other cases to which he pled guilty. His brief only argues issues related to FECR222183. Pursuant to Iowa Rule of Appellate Procedure 6.903(2)(g)(3), we deem the appeals in FECR220473 and FECR221049 waived and dismiss them.

[2] We note that appellant's brief is 16,796 words in length (91 pages), which violates Iowa Rule of Appellate Procedure 6.903(1)(g)(1) (14,000 word limit). *See Neuman v. Callahan*, No. 18-0282, 2019 WL 3331247, at * 3 (Iowa Ct. App. July 24, 2019) ("Rule infractions are not a trivial matter. A party's disregard of the rules may lead to summary disposition of the appeal or waiver of an issue." (quoting *State v. Lange*, 831 N.W.2d 844, 847 (Iowa Ct. App. 2013))). We do not condone such violation, especially because our review of the brief discloses unnecessary repetition.

[3] Greer testified she and acquaintances bought unlocked cell phones from the store. Greer would then sell them to Souri and report to the carriers that the cell phones were missing.

them to Souri for cash. They met multiple times at the Hy-Vee gas station to exchange cell phones and cash. Greer knew Souri had a car dealership and carried large amounts of cash in a fanny pack he always wore at their meetings.

One day in October 2017, Greer was unemployed and out of money. She and Brown wanted money so they could move in together and devised a plan to meet with Souri and take the cash from him. Greer texted Souri and arranged to meet him at the Hy-Vee gas station around 10:30 a.m. She drove her black Chevy Cruze up to a pump; Brown was in the passenger seat. Souri pulled up next to her car, parked about six feet away, and got out. Greer got out and placed a plastic bag on the hood of Souri's vehicle.

Souri looked in the plastic bag, but it did not contain any cell phones. Greer walked toward the trunk of her car. Souri believed she had grabbed the wrong bag and was going to get the correct one from her trunk. As Souri was watching Greer, a black man wearing a black hat and black jacket or sweater approached him from the passenger side of Greer's car. Greer got back into the driver's seat. The man demanded Souri's fanny pack, containing all his cash. Souri said, "What?" The man again demanded the fanny pack and, pulling back his sweater or jacket, pointed a gun at Souri. Souri described the gun as "big . . . one and a half foot, somewhere around there."

Souri handed over his fanny pack. The man got back into the passenger seat of Greer's car, and Greer started to drive away. Souri approached the car and asked for at least his IDs back. The man replied, "Fuck the IDs," and Greer drove off at a high speed. A Hy-Vee employee had watched Greer drive off. He

did not see the robbery itself nor could he identify the participants other than a "[d]arker skin male" and Souri. Together, he and Souri called 911.

Greer testified that as they drove away, Brown took out the cash and threw the fanny pack with the remaining contents out the car window. They drove to Brown's mother's house to stow away the gun and so Brown could change clothes. Then, using the cash, they bought a couch, marijuana, and paid some bills. Afterward, they went to Greer's mother's house so Greer could change clothes. As they were driving, Brown threw his black hat and black jacket over a bridge and into a river.

Later on in the afternoon, the police stopped Greer's car in which Brown was still a passenger. Greer was arrested on an unrelated warrant, and Brown was released. Several weeks later, Greer spoke with detectives and informed them Brown committed the robbery.

Later on the day of the robbery, during the police investigation, Souri was shown a photo line-up of possible perpetrators. At the time, he identified Brown with 75% certainty. At trial, seeing Brown in person, Souri identified him as the person who had robbed him. Souri also testified that at an earlier court appearance, upon seeing Brown in person, he had identified him as the robber. On cross-examination, Souri testified he could not be sure if the person he identified in the photo line-up was correct. He further stated, "[B]lack people, to me, they all look almost the same." He added as an "example for Chinese people that, you know, the character of their faces are all almost the same. So it's just like that for black people for me personally." Souri was unable to identify any other

distinctive characteristics about the person who robbed him such as tattoos or other features.

Also while interviewed by police, Souri drew a picture of the gun the robber used, showing a long barrel with two handles and a trigger in the middle. The drawing was admitted as evidence at trial. He described the gun as silver in color. Officers recovered photographs from Greer's phone showing Brown holding a gun. In the photograph submitted at trial, Brown holds a black gun. It bears two handles and is similar to the weapon drawn by Souri. A police officer testified this weapon is TEC-9 style semi-automatic weapon. Greer testified this was the gun Brown used for the robbery. No gun was ever recovered during the investigation.

On September 10, 2018, a jury returned a verdict of guilty on the first-degree robbery charge. At sentencing on November 5, 2018, the court imposed an indeterminate term of incarceration not to exceed twenty-five years. Applying the then-existing mandatory-minimum sentencing provision, the court ordered Brown to serve a minimum of seventy percent of that term. Brown appeals.

## II. ANALYSIS

### A. Ineffective-Assistance-of-Counsel Claims

Brown raises several ineffective-assistance-of-counsel claims.[4] Although Brown did not raise these claims below, ineffective assistance provides an exception to our error-preservation rules. *See Nguyen v. State*, 878 N.W.2d 744,

---

[4] The legislature amended Iowa Code section 814.7, effective July 1, 2019, eliminating direct-appeal ineffective-assistance-of-counsel claims. 2019 Iowa Acts ch. 140, § 31 (codified at Iowa Code § 814.7 (2019)). The amendment applies prospectively and does not apply to cases pending on July 1, 2019, so it does not apply in this case. *See State v. Macke*, 933 N.W.2d 226, 235 (Iowa 2019).

750 (Iowa 2016). Our review here is de novo. *Id.* Generally, we prefer to preserve ineffective-assistance claims for postconviction-relief proceedings, but where the record is adequate, we may address them. *State v. Kuhse*, 937 N.W.2d 622, 627 (Iowa 2020).

To establish ineffective assistance, Brown must prove (1) that trial counsel breached an essential duty and (2) that prejudice resulted. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Kuhse*, 937 N.W.2d at 628. "If we conclude a claimant has failed to establish either of these elements, we need not address the remaining element." *Dempsey v. State*, 860 N.W.2d 860, 868 (Iowa 2015). Prejudice occurs when, but for counsel's errors, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694. Where the evidence of guilt is overwhelming, we will find no prejudice. *Id.* at 696. Here, the record is adequate to address the claims, and we find we need only address the prejudice prong.

### 1. Sufficiency of the Evidence.

Brown contends trial counsel was ineffective in not raising a sufficiency argument specifically on the lack of sufficient evidence to show he was the person who committed the robbery. We review sufficiency-of-the-evidence claims for errors at law. *State v. Mathias*, 936 N.W.2d 222, 226 (Iowa 2019). We uphold the verdict if it is supported by substantial evidence. *Id.* "Evidence is substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt." *Id.* (quotations omitted).

Brown argues Souri's identification of him was unreliable because Souri later admitted "black people . . . all look almost the same" to him. He further argues Greer's testimony is inadequate to establish he was the robber because

she was his accomplice, and the State failed to present sufficient independent corroborating evidence to link Brown to the crime.

Brown concedes Greer was not charged or tried as an accomplice. "An accomplice is a person who could be charged with and convicted of the specific offense for which an accused is on trial." *State v. Douglas*, 675 N.W.2d 567, 571 (Iowa 2004) (quotations omitted) (quoting *State v. Berney*, 378 N.W.2d 915, 917 (Iowa 1985)). "It must be established by a preponderance of the evidence that the person was involved in some way in the commission of the crime." *Id.* "When the facts and circumstances are undisputed and permit only one inference, whether a witness is an accomplice is a question of law for the court." *Id.* (citing *State v. Harris*, 589 N.W.2d 239, 241 (Iowa 1999)). "If the facts are disputed, however, or give rise to different inferences, the question is for the jury." *Id.* (citing *Harris*, 589 N.W.2d at 241). It is undisputed that Greer participated in the commission of the crime through planning, luring Souri to the meeting point, and driving Brown to and from the robbery in her car. For the purpose of evaluating this claim, we find a preponderance of evidence supports concluding Greer was an accomplice.

"A conviction cannot be had upon the testimony of an accomplice or a solicited person, unless corroborated by other evidence which shall tend to connect the defendant with the commission of the offense." Iowa R. Crim. P. 2.21(3). "[C]orroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof." *Id.* "Corroborative evidence need not be strong as long as it can fairly be said that it tends to connect the accused with the commission of the crime and supports the credibility of the accomplice." *State v.*

*Banes*, 910 N.W.2d 634, 638 (Iowa Ct. App. 2018) (quoting *State v. Barnes*, 791 N.W.2d 817, 824 (Iowa 2010)).

Although we understand Brown's point that the credibility of Souri's identification was diminished after Souri testified he is unable to distinguish individuals within a particular race, we must view the evidence in the light most favorable to the State. Souri identified Brown at trial as the person who robbed him. At a photo line-up on the day of the robbery, Souri was 75% confident as to his identification of Brown. Nonetheless, we consider whether there is additional independent evidence in the record beyond Greer's testimony that connects Brown to the commission of the crime and lends credibility to her testimony.

We conclude there is: first, the Hy-Vee surveillance video supports Greer's version of events at the gas station. It depicts an African-American man sitting in the passenger seat of her car, wearing black. The individual approaches Souri off-camera, then runs back to the car moments later carrying an item with straps, and gets back in before Greer drives the car away. Although the surveillance video does not show his face, the man's height and build match Brown's. Second, when police stopped Greer's car later that afternoon, they discovered Greer and Brown inside along with a large amount of cash consisting of $100 bills as described by Souri. Third, cell phone photographs depict Brown posing with a gun that matches Souri's description and the picture he drew. Although Souri said the gun used in the robbery was silver and the gun in the picture is black, a police witness testified Souri could have been mistaken on the color due to the sunlight or the emotional effect of the robbery. An officer witness identified the gun Brown holds in the photographs as a TEC-9-style weapon. The officer also identified Souri's drawing

as depicting a TEC-9. We conclude there was sufficient independent evidence in the record to connect Brown to the commission of the crime and corroborate Greer's testimony.

Adding in Greer's testimony, the verdict is supported by substantial evidence. Greer testified she and Brown planned the robbery together, coordinating their actions to make a quick getaway. She knew Brown was planning to use the gun. She had pictures of Brown holding the gun on her cell phone. And she explained their financial motivation for the robbery as well as her knowledge that Souri carried a lot of cash in his fanny pack. Brown attacks Greer's testimony as "unreliable and not credible," but that was a question for the jury. *See State v. Hunt*, 801 N.W.2d 366, 377 (Iowa Ct. App. 2011) ("[T]he jury was free to believe or disbelieve the testimony of the witnesses and to give as much weight to the evidence as, in its judgment, such evidence should receive . . . . The very function of the jury is to sort out the evidence and place credibility where it belongs." (citation omitted)). Viewed in the light most favorable to the State, the evidence could convince a rational jury to find Brown guilty beyond a reasonable doubt.

"To establish prejudice in the context of an ineffective-assistance-of-counsel claim, a defendant must show a reasonable probability that the result of the trial would have been different . . . . [That] the probability of a different result is sufficient to undermine confidence in the outcome." *Kuhse*, 937 N.W.2d at 628 (quoting *State v. Ambrose*, 861 N.W.2d 550, 557 (Iowa 2015)). Brown has neither shown that, had counsel raised the identification issue, there is a reasonable probability of a different verdict, nor that the probability of a different result is

sufficient to undermine confidence in the verdict. Accordingly, we conclude he failed to prove counsel was ineffective.

**2. Jury Instructions.**

Brown next faults his trial counsel for failing to request or object to the court's failure to give two particular jury instructions. When a criminal defendant has preserved the claim at trial, "[e]rrors in jury instructions are presumed prejudicial unless the 'record affirmatively establishes there was no prejudice.'" *State v. Lorenzo Baltazar*, 935 N.W.2d 862, 871 (Iowa 2019) (citation omitted). However, for "ineffective-assistance-of-counsel claims based on failure to preserve error . . . a defendant must demonstrate a breach of an essential duty and prejudice." *State v. Maxwell*, 743 N.W.2d 185, 196 (Iowa 2008) (citations omitted).

Accomplice Testimony Instruction. Brown contends counsel was ineffective in failing to request the court give the jury an instruction on corroboration of accomplice testimony, specifically, Iowa Bar Association Uniform Criminal Jury Instruction 200.4:

> An "accomplice" is a person who knowingly and voluntarily cooperates or aids in the commission of a crime.
> A person cannot be convicted only by the testimony of an accomplice. The testimony of an accomplice must be corroborated by other evidence tending to connect the defendant with the crime.
> If you find (name of witness) is an accomplice, the defendant cannot be convicted only by that testimony. There must be other evidence tending to connect the defendant with the commission of the crime. Such other evidence, if any, is not enough if it just shows a crime was committed. It must be evidence tending to single out the defendant as one of the persons who committed it.

We have already found a preponderance of evidence supports finding Greer was an accomplice. We have also found that, despite the additional burden of

corroboration required of accomplice testimony, substantial evidence exists to prove Brown committed the robbery. Even if the jury had received this instruction, it would have reasonably found sufficient corroborative evidence of Greer's testimony to support the conviction. Accordingly, Brown cannot show he was prejudiced by counsel's failure.

Brown argues it is prejudicial error to fail to give the jury this instruction because the accomplice, Greer, was the only witness providing credible identifying testimony against him. *See State v. Anderson*, 38 N.W.2d 662, 665 (Iowa 1949) ("It is prejudicial error to fail to instruct even without request on the requirement of corroboration where the jury could find the only witness against defendant was an accomplice."). Brown discounts Souri's identification of him but, once again, we are obligated to view his identification in the light most favorable to the State. Souri identified Brown at trial and picked him out of a six-photograph line-up with a reasonably high degree of certainty later on the date of the robbery. His testimony corroborates and comports with that of Greer. Greer was not the only witness against Brown, so it was not prejudicial error to fail to give the accomplice testimony jury instruction.

Eyewitness Identification Instruction. Brown next contends counsel was ineffective in failing to request a jury instruction cautioning the jury on the limitations of eyewitness identification or, alternatively, failing to present expert witness testimony on eyewitness identification. His argument focuses entirely on Souri's faulty identification. Again, he discounts Greer's extensive testimony of Brown's participation. And again, because we have already concluded sufficient

evidence corroborates Greer's testimony and the verdict, Brown has not shown he was prejudiced by counsel's failure.

### 3. Cumulative effect.

Brown further claims that the cumulative effect of his trial counsel's ineffective representation entitles him to a new trial. We "look to the cumulative effect of counsel's errors to determine whether the defendant satisfied the prejudice prong of the *Strickland* test." *State v. Clay*, 824 N.W.2d 488, 500 (Iowa 2012). Because Brown raises multiple claims of ineffective assistance of counsel, we must consider whether "the alleged errors, cumulatively, do not amount to *Strickland* prejudice." *Id.* at 502. Because we conclude no prejudice occurred in any of the alleged errors, we find no cumulative prejudice and reject Brown's ineffective-assistance-of-counsel claims.

### B. Photographic Evidence

Brown next contends the district court abused its discretion in admitting the photographs on Greer's phone of him with the TEC-9 weapon. He argues the photographs were both irrelevant and more prejudicial than probative. The five photographs the court admitted over Brown's objection depict Brown holding a black gun with double handles and a trigger in the middle, posing at various angles while brandishing the gun.

We review evidentiary rulings for abuse of discretion. *State v. Williams*, 929 N.W.2d 621, 628 (Iowa 2019). We reverse "only if the district court's decision rests on grounds or reasoning that were clearly untenable or clearly unreasonable." *Id.* at 629 (quoting *State v. Plain*, 898 N.W.2d 801, 811 (Iowa 2017)).

### 1. Relevance.

"Evidence is relevant if: (a) [i]t has any tendency to make a fact more or less probable than it would be without the evidence; and (b) [t]he fact is of consequence in determining the action."  Iowa R. Evid. 5.401.  Brown argues the photographs are not relevant because the gun depicted does not match the description given by Souri.  He points out the gun used in the robbery has never been recovered.

The jury was required to find Brown threatened Souri "with or purposely put him in fear of, immediate serious injury" and that Brown "was armed with a dangerous weapon."  The jury was also told, "A firearm is a dangerous weapon." Thus, the presence of the gun and the identity of the holder of the gun were facts of consequence in the prosecution.

Because the gun was never recovered, the only evidence of its use was testimony from Souri and Greer and the photographs.  The photographs were offered to connect Brown to the gun used in the robbery.  Souri described the gun the robber used as "big" and estimated it to be one-and-a-half feet in length.  He drew a picture for police showing it had two handles with a trigger in the middle, like the gun in the photographs and, although he described it as silver, a police witness testified he could have been mistaken due to the glare of the sun or the heightened emotional impact of the robbery.  The photographs were taken just two weeks before the robbery and tend to show Brown had access to a gun that looked very similar, even if it was not an exact match, to the gun used in the robbery.  We do not consider the mismatched color of the gun to be fatal to its relevance—this goes to the weight the jury should assign to the evidence, not whether it is admissible.  The evidence offered goes to the opportunity and identity of the gun

and its owner, Brown. We find it was probative as to those material issues because it tended to make it more likely than not Brown was the gun-wielding robber.

## 2. More Prejudicial Than Probative.

Brown next contends the evidence was used to "arouse the juror's emotions and unfairly prejudice Brown." "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Iowa R. Evid. 5.403. Souri and Greer both testified that Brown used the TEC-9-style gun in the robbery. Their apparently credible testimony is all that was needed to prove Brown used a gun in the commission of the robbery. In that light, the probative value of the photographs is relatively low. Still, there is nothing in the record to show Brown is not permitted to lawfully possess a gun, and the photos are not particularly provocative or threatening in composition. We see little to arouse the jury's emotions or inflame their prejudices against Brown particularly in light of the considerable amount of testimony on his identity already in the record. We cannot find the probative value of the photographs is substantially outweighed by the danger of unfair prejudice against Brown.

Accordingly, we find the district court did not abuse its discretion in admitting the photographs.

## C. Mandatory Minimum Sentencing

Brown next argues he should be permitted to take advantage of a retroactive ameliorative sentencing amendment applicable to first-degree robbery convictions. We review a sentencing for the correction of errors at law. *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002); *see also State v. Lathrop*, 781 N.W.2d 288, 293 (Iowa 2010) ("[E]rrors in sentencing may be challenged on direct appeal

even in the absence of an objection in the district court."). We also review claims of statutory interpretation for legal error. *Williams*, 910 N.W.2d at 589.

At the time of his sentencing, November 2018, the applicable statute declared a person convicted of first-degree robbery—among other offenses— "shall be denied parole or work release unless the person has served at least seven-tenths of the maximum term of the person's sentence." Iowa Code § 902.12(1)(e) (2018).

Several months later, the Iowa General Assembly enacted Senate File 589, an omnibus criminal bill, which took effect July 1, 2019. The bill amended section 902.12 to include the following mandatory-minimum provision:

> A person serving a sentence for a conviction for robbery in the first degree in violation of section 711.2 *for a conviction that occurs on or after July 1, 2018*, shall be denied parole or work release until the person has served between one-half and seven-tenths of the maximum term of the person's sentence as determined under section 901.11, subsection 2A.

2019 Iowa Acts ch. 140, § 8 (codified at Iowa Code § 902.12(2A)) (emphasis added).

The same act created another new subsection:

> At the time of sentencing, the court shall determine when a person convicted of robbery in the first degree as described in section 902.12, subsection 2A, shall first become eligible for parole or work release within the parameters specified in section 902.12, subsection 2A, based upon all pertinent information including the person's criminal record, a validated risk assessment, and the negative impact the offense has had on the victim or other persons.

2019 Iowa Acts ch. 140, § 6 (codified at Iowa Code § 902.11(2A)).

The new law gives an aspect of discretion to the sentencing court that did not exist at the time of Brown's sentencing. Now, the sentencing court must set a

minimum term of incarceration between 50% and 70%. The amendment applies to convictions after July 1, 2018, which includes Brown's conviction in September 2018. Brown asks that we vacate his sentence and remand for the district court to make the minimum-term determination.

When we interpret new code provisions, we look to the plain language and apply the statutes as written if they are unambiguous. *See State v. Wickes*, 910 N.W.2d 554, 571 (Iowa 2018). Without dispute, the unambiguous, plain language of these amendments allows a person convicted of first-degree robbery after July 1, 2018, to have the sentencing court determine the appropriate mandatory minimum between "one-half and seven-tenths of the maximum term of the person's sentence."

Because the legislature determined this provision applies retroactively, it applies to Brown. We agree he is entitled to seek the benefit of the ameliorative sentencing provision. *See Clayton v. Iowa Dist. Ct. for Scott Cty.*, 907 N.W.2d 824, 828 (Iowa Ct. App. 2017) ("Sentencing is a legislative function. We afford broad deference to the legislature in setting the penalties for criminal conduct and in determining when the penalties are to go into effect."); *see also State v. Fagan*, No. 19-0492, 2020 WL 1310319, at *2 (Iowa Ct. App. Mar. 18, 2020). The State agrees Brown qualifies for the new sentencing provision.

Therefore, we vacate the portion of the sentencing order setting a mandatory minimum of seventy percent and remand for the district court to determine when Brown will be eligible for parole or work release, consistent with Iowa Code sections 902.11(2A) and .12(2A).

**CONVICTION AFFIRMED; SENTENCED VACATED IN PART AND REMANDED.**