**IN THE COURT OF APPEALS OF IOWA**

No. 16-0548
Filed July 27, 2016

**IN THE INTEREST OF M.M. and I.M.,**
**Minor children,**

**O.F., Father,**
Appellant,

**J.M., Mother,**
Appellant.

_____

Appeal from the Iowa District Court for Winnebago County, Karen Kaufman Salic, District Associate Judge.

A mother and father appeal the juvenile court's review orders modifying the dispositional orders and placing two of their children in the custody of the Iowa Department of Human Services for placement in family foster care. **AFFRIMED ON BOTH APPEALS.**

Philip L. Garland, Garner, for appellant father.

Jane M. Wright, Forest City, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Theodore J. Hovda, Garner, for minor children.

Considered by Potterfield, P.J., and Mullins and McDonald, JJ.

**McDONALD, Judge.**

A mother and father appeal from the modification of two dispositional orders in this child-in-need-of-assistance (CINA) proceeding. The modification orders removed two of the parents' three children from the parents' care and placed the children in the custody of the Iowa Department of Human Services (DHS) for placement in family foster care. The parents argue the juvenile court was not authorized to modify the dispositional orders without first finding a substantial and material change in circumstances occurred. The parents also argue DHS failed to make reasonable efforts to maintain the integrity of the family unit.

I.

This appeal relates to two of the parents' three children, M.M. and I.M.[1] M.M. is eight years old, and I.M. is seven years old. The family came to the attention of DHS in June 2015, when the couple's youngest child, L.M., nearly died as a result of an untreated medical condition. On June 29, 2015, when L.M. was less than one month old, the mother brought L.M. to an emergency room. The child was unresponsive. Medical professionals discovered L.M. had a fairly common medical condition, which prevented formula from being digested. Most children suffering the condition fully recover, but L.M.'s situation had become critical because the parents failed to obtain timely medical care. By the time the mother sought care, the child was severely dehydrated and oxygen deprived.

---

[1] The parents also sought review of the district court's permanency order regarding the parent's third child, L.M., but the supreme court dismissed the appeal as to L.M. upon the State's motion.

The parents' failure to obtain timely and appropriate care for L.M. led DHS and the juvenile court to become involved with all three of the family's children. All three were adjudicated children in need of assistance in September 2015. The juvenile court found M.M. had autistic characteristics and I.M. had been diagnosed with severe autism. The juvenile court found the parents were "not following through with recommended services." The juvenile court also noted a history of violence in the home. The juvenile court summarized its CINA adjudication:

> The children clearly need more than they are receiving. Fortunately, neither [I.M.] or [M.M.] have faced an acute medical condition that could deteriorate rapidly like [L.M.]'s. The obvious concern—which is not speculative or remote—is that neither parent could recognize or appropriately respond to [the children]'s needs. The children have not received proper supervision, and it seems unlikely that will change without [DHS] intervention and Court supervision.

The juvenile court transferred custody of L.M. to DHS for placement in family foster care. M.M. and I.M. were allowed to remain with their parents.

In October 2015, the juvenile court issued its dispositional orders. The juvenile court noted additional risks to the children, including the poor condition of the family home and the fact the mother was overwhelmed by her obligations to M.M. and I.M. due to the father's absence from the home during most of the work week. The juvenile court noted, "The problems for which the Court became involved have not resolved. The level of compliance by family members is indicative of the family's progress." The juvenile court ordered the family to participate in a number of services but allowed M.M. and I.M. to remain with their parents.

In January 2016, the juvenile court issued its review orders. A psychological evaluation found the mother was in the borderline intellectual functioning range. The mother considered her daughter, who had been diagnosed with severe autism, to be high functioning. The mother stated a belief the daughter's condition could be cured with medication. The juvenile court stated, "It is very clear that [the] parents are not in a position to consistently meet the needs of any of the children," before again ending with the statement, "The problems for which the Court became involved have not resolved. The level of compliance by family members is indicative of the family's progress." Once again, however, the juvenile court left M.M. and I.M. "in the custody of their parents for placement in their home, and subject to supervision by [DHS]." The juvenile court did warn, "If things do not improve dramatically by the next hearing [M.M.] and [I.M.] will likely be removed from the custody of their parents."

The State filed a motion to modify placement in March 2016. Following a contested review and modification hearing, the juvenile court issued review orders modifying the dispositional orders. The juvenile court removed both M.M. and I.M. from the parents, and the juvenile court transferred custody of each child to DHS for placement in family foster care. The court explained:

> With respect to [M.M.] and [I.M.], it is not questioned at all that the parents, especially [the] mother, care about each of the children very much and want to meet all of their needs and give them everything that they require. In a large part, it is likely a failing of this court for not removing the children at the time of disposition. I think the hope was that the parents would be able to learn what they needed to do to meet the children's needs and everyone was very hopeful, and so that dispositional order last fall allowed the children to stay at home with a number of orders in place. Even the first adjudicatory order directed . . . the parents to enroll the children in the Autism Center. We're at a point here in March where only

[I.M.] has started. [M.M.] is on the wait list. That's just one of the services and an example of how long we've sort of languished in this case hoping that the parents can get these things started. Each of the children has their own special needs. [I.M.] requires a great deal of supervision, and I think that [the DHS social worker]'s recommendation that they be placed in separate homes is a . . . real life example of how difficult it would be for any parent to provide them what they need because they do require so much care, and it certainly isn't anything taken lightly by this court either, that removing children from the care of their parents and separating siblings is a very dramatic step and isn't done very often, but certainly when it is, it's because there's been a determination made that that's what's required for the best interest of the children.

Again, we have hoped and wished for, I guess, another miracle for this case. [L.M.] nearly died. . . . [B]ut hoping isn't going to improve this situation. . . . I certainly can see how the many needs of these children could be overwhelming and it would be difficult to know where to start, but it's March, adjudication happened back in September, and we are no further along than when we started. I think it's very telling that [I.M.] was seen at the Autism Center three years ago and their assessment is she's in no better place three years later than she was that day, which is difficult to comprehend and needs to be remedied immediately.

I am going to adopt the recommendations made by [DHS] in the most recent report and [M.M] and [I.M.] will be placed in the temporary care, custody, and control of [DHS] for their placement in family foster care. . . .

The court further explained:

M.M. and I.M. have remained in the home, against this court's better judgment. It is clear that all participants, including [DHS] . . . have been hopeful that the situation would improve for them at home. *Instead, things remain unchanged.* . . .
. . . .
Despite every opportunity and the passage of six months, it is clear that neither parent has the ability to keep these children safe or act in their best interest.

The problems for which the court became involved have not resolved. The level of compliance by family members is indicative of the family's progress.

(Emphasis added).

II.

Our review of CINA proceedings is de novo. *See In re K.B.,* 753 N.W.2d 14, 15 (Iowa 2008). "In reviewing the proceedings, we are not bound by the juvenile court's fact findings; however, we do give them weight." *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014). "Our primary concern is the children's best interests." *Id.* CINA determinations must be based upon clear and convincing evidence. *See* Iowa Code § 232.96(2) (2015). Evidence is clear and convincing when there are no serious or substantial doubts as to the correctness of conclusions drawn from it. *See In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).

III.

As a prerequisite to the transfer of custody from the parents to another, the juvenile court must find that "(1) the child cannot be protected from physical abuse without transfer of custody; or (2) the child cannot be protected from some harm which would justify the adjudication of the child as a child in need of assistance and an adequate placement is available." Iowa Code § 232.102(5)(a). Furthermore, the juvenile court "must make a determination that continuation of the child in the child's home would be contrary to the welfare of the child, and identify the reasonable efforts that have been made." *Id.* § 232.102(5)(b). The parents contend the State must also establish a material and substantial change in circumstances as a prerequisite to modification of prior dispositional orders.

Our case law does provide that "modification of custody or placement requires a material and substantial change in circumstances." *In re R.F.*, 471 N.W.2d 821, 824 (Iowa 1991). This rule was first set forth in *In re Leehey*, 317

N.W.2d 513, 516 (Iowa Ct. App. 1982). *Leehey* involved parents battling each other within a juvenile court proceeding for the custody of their child. The *Leehey* court, relying on dissolution law, asserted that modification of a dispositional order first required a showing of a material and substantial change in circumstances. The importation of the dissolution law principles was unnecessary, and no subsequent case has explained the rationale for the rule. The necessity and merits of the rule seem questionable. We need not decide, however, whether *Leehey* and its progeny have ongoing merit because the legislature has decided the issue.

"Juvenile legislation is a response to the modern spirit of social justice." *State ex rel. Roberts v. Johnson*, 194 N.W. 202, 202 (Iowa 1923). "In solving the problems of social concern in our modern life the Legislatures of the different commonwealths have seen fit to prescribe the manner and method of procedure in relation to child welfare." *Id.* Thus, "CINA proceedings are creatures of statute." *In re B.N.*, No. 14-1465, 2014 WL 6682454, at *2 (Iowa Ct. App. Nov. 26, 2014). Iowa Code section 232.103 sets forth the grounds authorizing modification of a dispositional order. In 2004, post *Leehey* and *R.F.*, the statute was amended, *see* 2004 Iowa Acts ch. 1154, § 2, and now provides as follows:

> The court may modify a dispositional order, vacate and substitute a dispositional order, or terminate a dispositional order and release the child if the court finds that any of the following circumstances exist:
>
> a. The purposes of the order have been accomplished and the child is no longer in need of supervision, care, or treatment.
> b. The purposes of the order cannot reasonably be accomplished.
> c. The efforts made to effect the purposes of the order have been unsuccessful and other options to effect the purposes of the order are not available.

d. The purposes of the order have been sufficiently accomplished and the continuation of supervision, care, or treatment is unjustified or unwarranted.

Iowa Code § 232.103(4). Two of the grounds are relevant here. First, the juvenile court may modify a dispositional order where "the purposes of the order cannot reasonably be accomplished." Iowa Code § 232.103(4)(b). Second, the juvenile court may modify a dispositional order where "efforts made to effect the purposes of the order have been unsuccessful and other options to effect the purposes of the order are not available." Iowa Code § 232.103(4)(c). Neither provision requires the juvenile court to find a substantial change in circumstances as a prerequisite to modification. *See In re K.S.-T.*, No. 14-0979, 2014 WL 5865081, at *4 (Iowa Ct. App. Nov. 13, 2014) (noting that a showing of a change in circumstances "is not statutorily mandated"); *In re V.B.*, No. 14-0315, 2014 WL 2600318, at *4 n.3 (Iowa Ct. App. June 11, 2014) ("However, since *Leehey*, our juvenile code has evolved. . . . To impose the additional requirement of showing a substantial change of circumstances, where our legislature has made provisions for permanency and created a two step process to modify a dispositional order to remove a child from a parent's care and transfer custody to DHS, is overly burdensome."). To the contrary, each provision implicitly recognizes the absence of a change in circumstances may demonstrate the purposes of a prior dispositional order cannot be achieved and modification is warranted.

While we have recognized the legislative amendment authorized modification of a dispositional order without requiring a material and substantial change in circumstances, at least in some instances, we have continued to

impose the requirement in deference to the supreme court. *See V.B.*, 2014 WL 2600318, at *4 n.3 ("However, because our supreme court has approved the principle, we defer to the supreme court whether case precedent should still be followed."). Such deference is not necessary here. The decisions of the supreme court regarding Iowa law are binding on this court until overruled by the supreme court or superseded by other legitimate authority. *Leehey* and its progeny, including *R.F.*, have been superseded by the 2004 amendment to section 232.103(4) and are not controlling under the circumstances presented here. *See McMartin v. Saemisch*, 116 N.W.2d 491, 493 (Iowa 1962) (recognizing decisions are no longer controlling where "outmoded and superseded by statute"). The language of the statute is controlling. We thus hold the juvenile court need not find a substantial change in circumstances as a prerequisite to modification of a dispositional order pursuant to Iowa Code section 232.103(4).

On de novo review, we conclude the record supports modification of the dispositional orders under the controlling statute. *See, e.g., In re A.K.*, No. 11-1404, 2012 WL 299982, at *3 (Iowa Ct. App. Feb. 1, 2012) ("We conclude the parents' disregard of the directives set forth in the dispositional order, the continued and worsened health and safety conditions of the family home, and the effect these issues have had on the children are substantial changes of circumstances that warrant modification of the prior court order."). We further conclude the reasonable efforts mandate has been satisfied. The core of the reasonable efforts mandate is the child welfare agency must make reasonable efforts to "facilitate reunification while protecting the child from the harm

responsible for the removal." *In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App.1996). The nature of the reasonable efforts mandate is determined by the circumstances of each case. *See In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000) (discussing scope of mandate). As set forth in the juvenile court's order, DHS has made substantial resources available to the family, and the family has failed to avail itself of those resources to effect positive change and minimize the risk of harm to the children.

IV.

For the foregoing reasons, we affirm the judgment of the juvenile court.

**AFFIRMED ON BOTH APPEALS.**

Mullins, J., concurs; Potterfield, P.J., dissents.

**POTTERFIELD, Presiding Judge.** (dissenting)

I dissent and would remand for findings by the juvenile court to support its decision to modify placement of the children. Despite the conclusion of the majority, the juvenile court is obligated to follow the statutory framework and the Iowa Supreme Court's rulings that have been established for modifications of dispositional orders that result in transfers of custody, and in this case it did not make the findings required by Iowa Code section 232.103(4). Nor did it make any finding regarding a change of circumstances. Both the juvenile court's statement on the record and its March 9, 2016 written review orders explained the court's concern was not a material and substantial change but, in fact, precisely the opposite—the case was languishing and the circumstances facing M.M and I.M. remained unchanged.

Unlike other cases in which modification of custody was justified by a material and substantial change in circumstances, the juvenile court's findings here do not support the conclusions that the children's situation was worsening or that the parents had wholly disregarded the court's orders, even if the juvenile court acknowledged the parents' compliance had been slow to occur. *See, e.g., In re A.K.*, No. 11-1404, 2012 WL 299982, at *3 (Iowa Ct. App. Feb. 1, 2012) (noting, among other factors, "the continued *and worsened* health and safety conditions of the family home" (emphasis added)). The juvenile court noted I.M. was assessed at the Opportunity Village Autism Center in February 2016 and was participating in services at the time of the March 2016 hearing; M.M. was still on a wait list for services because of a delay by the parents in filling out paperwork.

Without the juvenile court's findings, we have nothing to review. Because the juvenile court did not make the findings required by Iowa Code section 232.103(4), nor did it make any finding regarding a change of circumstances, it has not stated an adequate basis for modification of the dispositional orders. I believe we are therefore compelled to remand this case for further proceedings and findings by the juvenile court. *See, e.g., In re B.L.*, 491 N.W.2d 789, 793 (Iowa Ct. App. 1992) ("We find the court failed to address the issue of the least restrictive available placement as required by Iowa Code section 232.52(7), and we remand for that purpose.").